OPINION OF THE COURT
Richard J. Daronco, J.
This matrimonial action is brought by plaintiff husband, now a medical doctor, under part B of section 236 of the Domestic Relations Law referred to as the “marital equitable distribution law” effective July 19, 1980 (L 1980, ch 281). The question to be determined is whether or not contributions to a spouse’s medical education are subject to equitable distribution upon dissolution of the marriage which occurs shortly after receipt of a medical degree and license.
The essential facts are undisputed.
The parties were married on April 3, 1971 and lived together for approximately nine years. There are no children of this marriage. Plaintiff (Dr. O’Brien) left the marital residence during 1980. Both parties enjoy relatively good health.
*234 At the beginning of the marriage, defendant (Mrs. O’Brien) had a temporary teacher’s certificate and was employed as a grammar school teacher in a parochial school. In order to obtain a permanent teacher’s certificate from the State of New York, defendant would have been required to attend postgraduate studies for a period of 18 months at a cost of approximately $3,000 excluding living expenses. Defendant wife relinquished this opportunity so that plaintiff husband could obtain his educational goals. At the time of marriage, the plaintiff was a college dropout, and except for a brief period of employment plaintiff attended school throughout the vast majority of his married life. Plaintiff devoted his primary energies to obtaining a college degree, successfully completed premedical studies and ultimately attended medical school in Guadalajara, Mexico, as well as postmedical school internship during the marriage. Plaintiff is presently employed as a resident general surgeon in Cleveland, Ohio, earning approximately $17,000 per annum, and is under contract there until 1985. He currently resides with his intended new wife and her son by a former union and their infant daughter. Defendant has not remarried.
It is not controverted that defendant wife was both homemaker, and gainfully employed throughout the marriage, and that her entire earnings went for the parties’ joint support. During the period when the parties resided in Mexico, defendant was employed at two, and at times three positions, as- a kindergarten teacher, English tutor and English teacher.
Financial deficiencies in income coupled with educational expenses resulting from plaintiff’s full-time studies during the marriage required several student loans. Additional financial needs were provided by financial assistance, initially from defendant’s parents and thereafter from plaintiff’s parents.
From the inception of the marriage to the trial of this action, neither party has accumulated any substantial assets. A property settlement of their modest accumulated personal property was agreed upon by the parties before this action reached trial and the court will not disturb said division.
*235 Plaintiff husband sought a divorce on the grounds of cruel and inhuman treatment and constructive abandonment. Defendant answered and counterclaimed for a judgment of divorce on the grounds of cruelty, seeking equitable distribution of marital property and additional related financial relief, including, inter alia, expert witness fees and counsel fees. Plaintiff submitted a reply to defendant’s answer.
By consent of the parties, in the presence of counsel, plaintiff withdrew his complaint and reply to defendant’s counterclaim and defendant wife was granted an uncontested divorce on the grounds of constructive abandonment.
This case was bifurcated and a divorce entered in favor of defendant. All other issues pending were reserved. The case at bar presents the not uncommon situation where one spouse foregoes immediate personal benefits of income in order to support the marriage, thus enabling the other spouse to continue his or her education with its concomitant future financial rewards. In such case, as here, with a divorce shortly after obtaining a degree, there is usually, little or no accumulated marital property to be divided upon dissolution of the marriage.
Courts in other jurisdictions have considered the issue presented in this case. In the reported cases it is apparent that there exists divergent opinions on this point throughout the country. In some jurisdictions a property interest is recognized in cases of this type. (See, e.g., Matter of Horstmann, 263 NW2d 885 [Iowa] [law degree] that increased future earnings is a marital asset and is subject to equitable distribution; Inman v Inman, 578 SW2d 266 [Ky] [dental license]; Lynn v Lynn, NJ Super Ct, No. M - 9842 - 8, Dec. 5, 1981 [medical license]; also Moss v Moss, 80 Mich App 693 [medical license]; Daniels v Daniels, 20 Ohio Opns 2d 458 [medical license] the professional degree or license was treated as marital property; Hubbard v Hubbard, 603 P2d 747 [Okla] [medical license] an equitable claim exists for the working spouse’s investment; see, also, Sullivan v Sullivan, _ Cal App 3d _, Cal Ct App, Fourth Dist, Second Div, No. D-147767, Jan. 8, 1982 [medical license]; cf. Hill v Hill, 182 NJ Super 616 [dental license] *236 where a spouse had financially contributed to the other spouse’s obtaining a professional license an award by way of rehabilitative alimony was made.)
Other courts have refused to recognize a property interest in cases of this type. (See, e.g., Matter of Graham, 194 Col 429 [M.B.A. degree] lacks traditional property attributes; see, also, Mahoney v Mahoney, 182 NJ Super 598, revg 175 NJ Super 443 [M.B.A. degree] professional license is not separate property for equitable distribution; also a wife is not entitled to reimbursement for contributions made to support husband in achieving his educational goals on termination of marriage; Wilcox v Wilcox, 173 Ind App 661 [Ph.D. degree] increased earning capacity is not property although enhanced by working spouse; Stern v Stern, 66 NJ 340 [law partnership] earning capacity enhanced and developed by other spouse, no entitlement for reimbursement on termination by other spouse.)
The court is also aware of the recent decision of Lesman v Lesman (110 Misc 2d 815) in considering the issue presented in this case. In Lesman, the court concluded that a license to practice medicine is not property for purposes of equitable distribution of marital property in actions under part B of section 236 of the Domestic Relations Law. The court in determining an appropriate remedy stated (p 817) that the nonlicensed spouse “(P)layed no significant monetary role in the said medical education” of the husband.
The case at bar is totally distinguishable since the nonlicensed spouse played a significant monetary role in the medical education of the husband. The breakdown of this marriage relationship occurred shortly after completion of the. plaintiff’s professional schooling. The only valuable surviving asset acquired by either spouse during their nine-year marriage is the professional license of the plaintiff. Defendant subordinated her own education goals to that of the plaintiff. Defendant contributed to the marriage her full time, interest, energies and all her finances over this nine-year period. Defendant’s financial input was substantial; she contributed approximately 76% of the couple’s total income and assumed the dominant role of breadwinner so that plaintiff could achieve his ambition to obtain a medical license.
*237 When a spouse finances another’s education, and thus high earning capacity, it is unfair to deny her a share of this asset which would not exist but for her efforts. It is not reasonable to state that she can be compensated by higher maintenance since her ability to continue receiving it depends on her finding a new life in a second marriage. She should not be faced with this dilemma. Also, if the divorce follows close upon the licensing as in this case, the professional’s income may not yet be high enough for substantial maintenance. Indeed, her own earning capacity may preclude a large maintenance award.
One cannot ignore the question as to valuation if the professional does not practice, or, perhaps, if he is employed. This, however, is no basis for denying that a license is divisible property since these factual situations really relate only to the processes of valuation and distribution. As always, includibility, valuation, and the percentage of equitable distribution of the asset are separate questions.
With the passage of the equitable distribution law a profound change has been made in the standards which govern the division of property upon the dissolution of marriage. It is apparent that the Legislature envisioned an open property doctrine in the field of matrimonial law by introducing a new concept denominated “equitable distribution”. It speaks in terms of contribution of the parties, efforts of the parties and recognizes that “marital partners” are “economic partners”. The statute is expressed in comprehensive and general terms. It sets forth specific guidelines and new concepts of what constitutes “property”, authorizing courts to seek out equitable remedies within the context of a particular case.
The definition of marital property (Domestic Relations Law, § 236, part B, subd 1, par c), includes all property (both real and personal) which was acquired by both spouses or either of them during the marriage and before the commencement of a matrimonial action. The court is further authorized to distribute such property equitably between the parties, considering the circumstances of the case and the respective parties. In determining an equitable distribution of marital property, the court “shall” consider 10 factors, including the income and property of each *238 spouse at the time of marriage and at the time the action was commenced, the duration of the marriage, the age and health of the parties, the loss of inheritance and pension rights, the liquid or nonliquid character of all marital property, and the probable future financial circumstances of each party (Domestic Relations Law, § 236, part B, subd 5, par d, els [1], [2], [4], [7], [8]).
A distributive award is defined as payments provided for by the court “in lieu of or to supplement, facilitate or effectuate the division or distribution of property where authorized in a matrimonial action, and payable either in a lump sum or over a period of time in fixed amounts” (Domestic Relations Law, § 236, part B, subd 1, par b).
Section 236 (part B, subd 5, par d, cl [6]) of the Domestic Relations Law recognizes an equitable claim to, interest in, or direct or indirect contribution(s) made to the acquisition of marital property by the party not having title, including joint efforts or expenditures and contributions and services as a spouse, wage earner and homemaker, and to the career or career potential of the other party, and section 236 (part B, subd 5, par d, cl [10]) allows for any other factor that the court finds to be just and proper.
The adoption of this legislation (§ 236) had infused flexibility rather than rigidity in the measurement of the rights and obligations of family members upon dissolution of the family unit. It casts aside the traditional concepts of property in seeking equitable concepts and fairness in the multitude of variations in marital situations and the equities involved. The goal sought upofi the dissolution of a marriage is that there should be an equitable distribution of all family assets accumulated during the marriage and maintenance should rest on the economic basis of reasonable needs and ability to pay.
Governor Carey in approving the new marital equitable distribution law stated (McKinney’s Session Laws of NY, 1980, p 1863) “[it] represents the most sweeping reform of the divorce laws in the State since the Divorce Reform Act 1966.” The Governor further stated (ibid.) “The bill recognizes that the marriage relationship is also an economic partnership. Upon its dissolution, property accumulated *239 during the marriage should be distributed in a manner which reflects the individual needs and circumstances of the parties regardless of the name in which such property is held.”
In construing statutory provisions, the intent of the statute and the objectives sought to be accomplished must be kept in mind. The legislation must be given a reasonable interpretation so as to accomplish its purpose. The statute under consideration provides for a fair allocation of marital assets upon divorce. Marital property shall include all property acquired by a spouse, or both spouses jointly, during marriage. To the extent that such property is attributable to the expenditure or effort by either spouse it qualifies for equitable distribution under section 236 (part B, subd 1, par c; subd 5, par c) of the Domestic Relations Law.
The court, therefore, concludes the legislative intent to be that all property regardless of its source, in which a spouse acquires an interest during the marriage, except that which is deemed separate property (Domestic Relations Law, § 236, part B, subd 1, par d; subd 5, par b) is marital property and shall be eligible for equitable distribution in the event of divorce.
Under the unique circumstances of this case, this court finds that the medical school degree and license to practice medicine, obtained by plaintiff during the marriage are marital property as defined in section 236 (part B, subd 1, par c) and subject to equitable distribution under section 236 (part B, subd 5, par c). A contrary finding would contradict the spirit and intent of “equitable” distribution of marital assets.
It cannot reasonably be disputed that a wife who supports and maintains a husband while concluding his education to obtain a professional license or advanced degree, should be entitled to financial recognition for her efforts. This is particularly so where the marital relationship is abruptly terminated just prior to the anticipated life-style to be enjoyed by the marital partners subsequent to the period of sacrifice in obtaining the parties’ intended goal.
To allow a student spouse such as plaintiff in this case to leave a marriage with all the benefits of additional educa *240 tion and a professional license without compensation to the spouse who bore much of the burdens incident to procuring these would be unfair, and in the court’s opinion, contrary to the mandate of the Legislature where the marriage relationship is now viewed as an “economic partnership”.
The court recognizes that an educational degree and professional license are personable and cannot be sold, assigned, transferred, conveyed or pledged. This is not the issue however, since there is no attempt to obtain a transfer of the professional license itself, but rather a portion of the economic fruits of its possession, having in mind the circumstances under which it was obtained. The court is of the view that there can be no valid distinction made under the equitable distribution law between a degree or professional license acquired during the marriage as compared to a business or professional practice conducted during the course of the marriage where both were enhanced by the financial contributions and efforts of the other spouse.
Under the equitable distribution law (Domestic Relations Law, § 236, part B) no standards are presented for evaluating spousal interests in a degree or license to practice a profession. The task is difficult, nevertheless it is required to be made, and can be established by competent evidence. Courts in this State when considering the evaluation issue have made evaluations in determining the spousal interest. (See, e.g., Nehorayoff v Nehorayoff, 108 Misc 2d 311 [medical professional corporation]; Barton v Barton, NYLJ, May 20, 1982, p 10, col 6; and Hirschfeld v Hirschfeld, NYLJ, May 4, 1982, p 7, col 1 [a share of lawyer’s income].)
The defendant presented expert testimony in order to evaluate the monetary worth of the plaintiff’s medical degree and license to practice medicine. In this connection defendant presented expert witness Stanley Goodman, an attorney and certified public accountant. Mr. Goodman testified that his professional speciality is in the area of evaluation of professional practices and property involving equitable distribution matters. The plaintiff, on the other hand, failed to introduce any expert testimony as to this crucial issue.
*241 According to the defendant’s expert the evaluation of a medical education is separate and distinct from the evaluation of a medical license.
In his evaluation of the medical education he utilized the contributions of defendant’s earnings and the contributions made by her parents in excess of the plaintiff’s direct contributions, capitalizing these combined expenditures over the nine-year period of marriage. He concluded the present value of defendant’s financial contributions to plaintiff’s medical education over the nine years of marriage to be $103,390.
In determining the value of plaintiff’s medical license he considered the evidence pertaining to plaintiff’s age, health, entry into practice and his residency specialty (surgery) and capitalized the earning differential between a college graduate, and the earnings of a general surgeon over the productive life expectancy of the plaintiff in arriving at the present value of the plaintiff’s medical license. He concluded the present value of plaintiff’s medical license to be $472,000.
Under the circumstances of this case the court finds that the plaintiff’s education and degree constituted a property right under section 236 of the Domestic Relations Law and is subject to equitable distribution offset upon the dissolution of this marriage. The court is of the opinion that a meaningful and fair financial redress to defendant is to apportion the present value of the medical license in considering the life-style that the plaintiff will receive by virtue of his training resulting from defendant’s contributions and efforts that were directly focused on this property in question.
The court awards defendant $188,800, being 40% of the sole distributable assets ($472,000) acquired during this marriage. Anticipating an increase in plaintiff’s earning capacity payment thereof shall be made as follows:
November 1, 1982 $ 3,000
November 1, 1983 $ 5,000
November 1, 1984 $ 5,000
November 1, 1985 $ 7,000
November 1, 1986 $10,000
*242 November 1, 1987 $15,000
November 1, 1988 $25,000
November 1, 1989 $35,000
November 1, 1990 $35,000
November 1, 1991 $35,000
November 1, 1992 $13,800
TOTAL $188,800
and in order to insure the making of these payments the plaintiff is directed to keep and maintain a life insurance policy on his life for the benefit of the defendant in the amount of the unpaid balance due to defendant and furnish defendant a copy of same.
Based upon the proof adduced, the court makes no award to the defendant wife for maintenance.
Stanley Goodman, Esq., is awarded $1,000. This award is to be paid by plaintiff within 90 days after notice of entry of the judgment to be submitted hereon.
Under the circumstances presented herein and bearing in mind that defendant has already paid $1,500 towards counsel fees, the court awards defendant’s attorney the sum of $7,000 as counsel fees together with disbursements of $125 to be paid by plaintiff within the 90-day period as hereinabove described.