WOODWORTH v WOODWORTH

Docket No. 62204. Submitted November 8, 1982, at Lansing.—Decided June 6, 1983. Leave to appeal applied for.

Plaintiff, Michael G. Woodworth, and defendant, Ann M. Woodworth, were married on June 27, 1970. In 1973, they moved to Detroit, defendant found full-time employment and plaintiff attended law school. Plaintiff graduated, passed the bar exam, and is now a partner in a law firm. Plaintiff and defendant were divorced on January 6, 1982, Ingham Circuit Court, James T. Kallman, J. The court found plaintiff's law degree to be a marital asset subject to distribution and ordered plaintiff to pay defendant $20,000 at $2,000 per year for ten years. Plaintiff appealed and defendant cross-appealed. *Held:*

A postgraduate degree obtained by one spouse during the marriage as an end product of a concerted family effort to which both spouses contributed is a marital asset subject to division upon divorce. The value of that degree should be determined in light of the sources and extent of financial support given the degree holder while going to school, the overall division of the parties' marital property, the length of the marriage after the degree was obtained, and an estimate of the financial benefit of the degree to its holder.

Remanded with instructions.

Divorce — Marital Property — Postgraduate Degrees.

A postgraduate degree obtained by one spouse during the marriage as an end product of a concerted family effort to which both spouses contributed is a marital asset subject to division upon divorce; the value of that degree should be determined in light of the sources and extent of financial support given the degree holder while going to school, the overall division of the

References for Points in Headnote

15A Am Jur 2d, Community Property § 44.

24 Am Jur 2d, Divorce and Separation § 928.

Spouse's professional degree or license as marital property for purpose of alimony, support, or property settlement. 4 ALR4th 1294.

parties' marital property, the length of the marriage after the degree was obtained, and an estimate of the financial benefit of the degree to its holder.

*Michael G. Woodworth, in propria persona.*

*Abood & Abood, P.C.* (by *Diane L. Bernick*), for defendant.

Before: T. M. BURNS, P.J., and BEASLEY and K. N. HANSEN,[*] JJ.

T. M. BURNS, P.J. On January 6, 1982, the parties' divorce was finalized. Both parties appeal as of right.

The parties were married on June 27, 1970, after plaintiff had graduated from Central Michigan University with a bachelor's degree in secondary education and defendant had graduated from Lansing Community College with an associate degree. They then moved to Jonesville, where plaintiff worked as a teacher and coach for the high school and defendant worked as a nursery school teacher in Hillsdale. In the fall of 1973, they sold their house, quit their jobs,[1] and moved to Detroit, where plaintiff attended Wayne State Law School. Three years later, they moved to Lansing where plaintiff took and passed the bar exam and accepted a job as a research attorney with the Court of Appeals. Plaintiff is now a partner in a Lansing law firm.

For all intents and purposes, the marriage ended on August 25, 1980, when the parties separated. The following summarizes each party's earnings during the marriage:

---

[*] Circuit judge, sitting on the Court of Appeals by assignment.

[1] Defendant had already quit her job the year before after the parties' first child was born.

| Year | Plaintiff | Defendant |
|---|---|---|
| 1970 | $2,591 Jonesville High School (teacher/coach) | $1,422 Nursery School Teacher |
| | | 2,549 Grant Company (clerk) |
| 1971 | 7,989 Teacher | 4,236 Teacher |
| | 410 St. Anthony Ch. (instructor) | 280 St. Anthony Ch. (instructor) |
| 1972 | 9,691 Teacher | 2,525 Teacher |
| 1973 | 6,557 Teacher | 986 Bank Teller |
| 1974 | 2,483 Legal Aid (student lawyer) | 6,572 Bank Teller |
| 1975 | 2,588 Legal Aid (student lawyer) | 1,050 Bank Teller |
| | | 8,191 Dep't/Social Services (caseworker) |
| 1976 | 6,342 Court of Appeals (attorney) | 10,276 Dep't/Social Service (caseworker) |
| 1977 | 12,493 Court of Appeals (attorney) | 1,586 Dep't/Social Services (caseworker)[2] |
| | 5,595 Ass't. Pros. Att'y | |
| 1978 | 21,085 Ass't. Pros. Att'y | –0– |
| 1979 | 27,247 Ass't. Pros. Att'y | –0– |
| 1980 | 2,057 Ass't. Pros. Att'y | –0– |
| | 30,000 Private Practice | |

The basic issue in this case is whether or not plaintiff's law degree is marital property subject to distribution. The trial court held that it was, valued it at $20,000, and awarded this amount to defendant in payments of $2,000 over ten years.[3] Plaintiff contends that his law degree is not such a marital asset. We disagree.

The facts reveal that plaintiff's law degree was the end product of a concerted family effort. Both parties planned their family life around the effort

[2] Defendant quit this job in January after the parties' third child was born.

[3] This Court has stayed these payments pending this appeal's outcome.

to attain plaintiff's degree. Toward this end, the family divided the daily tasks encountered in living. While the law degree did not pre-empt all other facets of their lives, it did become the main focus and goal of their activities. Plaintiff left his job in Jonesville and the family relocated to Detroit so that plaintiff could attend law school. In Detroit, defendant sought and obtained full-time employment to support the family.

We conclude, therefore, that plaintiff's law degree was the result of mutual sacrifice and effort by both plaintiff and defendant. While plaintiff studied and attended classes, defendant carried her share of the burden as well as sharing vicariously in the stress of the experience known as the "paper chase".

We believe that fairness dictates that the spouse who did not earn an advanced degree be compensated whenever the advanced degree is the product of such concerted family investment. The degree holder has expended great effort to obtain the degree not only for himself or herself, but also to benefit the family as a whole. The other spouse has shared in this effort and contributed in other ways as well, not merely as a gift to the student spouse nor merely to share individually in the benefits but to help the marital unit as a whole.

This conclusion finds support in *Vaclav v Vaclav,* 96 Mich App 584; 293 NW2d 613 (1980), and *Moss v Moss,* 80 Mich App 693; 264 NW2d 97 (1978), *lv den* 402 Mich 946 (1978), which held that an advanced degree is an asset which could be considered in a property settlement. In addition, other jurisdictions have allowed the spouse who did not earn an advanced degree to recover: *In re Marriage of Lundberg,* 107 Wis 2d 1; 318 NW2d 918 (1982); *O'Brien v O'Brien,* 114 Misc 2d 233;

452 NYS2d 801 (1982); *DeLa Rosa v DeLa Rosa,* 309 NW2d 755 (Minn, 1981); *Hubbard v Hubbard,* 603 P2d 747 (Okla, 1979); *In re Marriage of Horstmann,* 263 NW2d 885 (Iowa, 1978); *Daniels v Daniels,* 90 Ohio L Abs 161; 20 Ohio Ops 2d 458; 185 NE2d 773 (Ohio App, 1961).

We are aware that numerous other cases have held that an advanced degree is not a marital asset and may be considered only (if at all) in determining alimony: *In re Marriage of Sullivan,* 134 Cal App 3d 634; 184 Cal Rptr 796 (1982);[4] *Lesman v Lesman,* 88 App Div 2d 153; 452 NYS2d 935 (1982); *Mahoney v Mahoney,* 182 NJ Super 598; 442 A2d 1062 (1982); *Wisner v Wisner,* 129 Ariz 333; 631 P2d 115 (Ariz App, 1981); *In re Marriage of Goldstein,* 97 Ill App 3d 1023; 53 Ill Dec 397; 423 NE2d 1201 (1981); *In re Marriage of McManama,* 399 NE2d 371 (Ind, 1980); *Frausto v Frausto,* 611 SW2d 656 (Tex Civ App, 1980); *Graham v Graham,* 194 Colo 429; 574 P2d 75 (1978); *Nastrom v Nastrom,* 262 NW2d 487 (Nd, 1978); *Muckleroy v Muckleroy,* 84 NM 14; 498 P2d 1357 (1972); *Todd v Todd,* 272 Cal App 2d 786; 78 Cal Rptr 131 (1969).

However, we reject the reasons given in these cases to support their conclusions. The cases first contend that an advanced degree is simply not "property":

"An educational degree, such as an M.B.A., is. simply not encompassed by the broad views of the concept of 'property'. It does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed, or pledged. An advanced

[4] On October 28, 1982, the California Supreme Court granted a hearing in this case.

degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. In our view, it has none of the attributes of property in the usual sense of that term." *Graham, supra,* 194 Colo 432.

Yet whether or not an advanced degree can physically or metaphysically be defined as "property" is beside the point.[5] Courts must instead focus on the most equitable solution to dissolving the marriage and dividing among the respective parties what they have.

"[T]he student spouse will walk away with a degree and the supporting spouse will depart with little more than the knowledge that he or she has substantially contributed toward the attainment of that degree." Comment, *The Interest of the Community in a Professional Education,* 10 Cal West L Rev 590 (1974).

In *DeLa Rosa, supra,* 309 NW2d 758, the Minnesota Supreme Court added:

"[O]ne spouse has foregone the immediate enjoyment of earned income to enable the other to pursue an advanced education on a full-time basis. Typically, this sacrifice is made with the expectation that the parties will enjoy a higher standard of living in the future."

Where, as in this case, the family goal of obtaining the law degree was the purpose of the substantial contribution and sacrifice, both the degree holder and his or her spouse are entitled to share

---

[5] At least one commentator has, however, presented a fairly persuasive theory for defining an advanced degree as property. Weitzman, *The Economics of Divorce: Social and Economic Consequences of Alimony and Child Support Awards,* 28 UCLA L Rev 1181 (1981).

in the fruits of the degree. The trial judge recognized as much:

"Here the plaintiff quit his job and entered law school. The defendant secured employment so plaintiff could become a professional with far greater earning capacity than he had, which would benefit him and their children. To permit this, upon divorce, to benefit only the party who secured the professional degree is unconscionable."

The next argument is that a marriage is not a commercial enterprise and that neither spouse's expectations are necessarily going to be met after the divorce:

"I do not believe that a spouse who works and contributes to the education of the other spouse during marriage normally does so in the expectation of compensation." *Sullivan, supra,* 184 Cal Rptr 801 (Kaufman, P.J., *concurring).*

Furthermore:

"They do not nor do they expect to pay each other for their respective contributions in any commercial sense. Rather, they work together, in both income and nonincome producing ways, in their joint, mutual and individual interests.

"The termination of the marriage represents, if nothing else, the disappointment of expectations, financial and nonfinancial, which were hoped to be achieved by and during the continuation of the relationship. It does not, however, in our view, represent a commercial investment loss. Recompense for the disappointed expectations resulting from the failure of the marital entity to survive cannot, therefore, be made to the spouses on a strictly commercial basis which, after the fact, seeks to assign monetary values to the contributions consensually made by each of the spouses during the marriage.

* * *

"If the plan fails by reason of the termination of the marriage, we do not regard the supporting spouse's consequent loss of expectation by itself as any more compensable or demanding of solicitude than the loss of expectations of any other spouse who, in the hope and anticipation of the endurance of the relationship in its commitments, has invested a portion of his or her life, youth, energy and labor in a failed marriage." *Mahoney, supra,* 182 NJ Super 612-614.[6]

We agree that a marriage is not intrinsically a commercial enterprise. Instead, it is a relationship sanctioned by law governed at its essence by fidelity and troth. Neither partner usually expects to be compensated for his or her efforts. But that consideration does not end the discussion. We are not presently concerned with how best to characterize a marriage while it endures. Instead, we are concerned with how best to distribute between the parties what they have once the marriage has for all intents and purposes dissolved. In other words:

"To allow a student spouse * * * to leave a marriage with all the benefits of additional education and a professional license without compensation to the spouse who bore much of the burdens incident to procuring these would be unfair * * *." *O'Brien, supra,* 452 NYS2d 805.

Furthermore, we also agree that divorce courts cannot recompense expectations. However, we are not talking about an expectation here. Defendant is not asking us to compensate for a failed expectation that her husband would become a wealthy lawyer and subsequently support her for the rest of her life. Instead, she is merely seeking her

[6] The New Jersey Supreme Court affirmed this case on December 15, 1982.

share of the fruits of a degree which she helped him earn. We fail to see the difference between compensating her for a degree which she helped him earn and compensating her for a house in his name which her earnings helped him buy.

The third argument against including an advanced degree as marital property is that its valuation is too speculative. In *Lesman, supra,* 452 NYS2d 938-939, the Court stated:

"Gross inequities may result from predicating distribution awards upon the speculative expectation of enhanced future earnings, since distributive awards, unlike maintenance, once fixed may not be modified to meet future realities. It is almost impossible to predict what amount of enhanced earnings, if any, will result from a professional education. The degree of financial success attained by those holding a professional degree varies greatly. Some, even, may earn less from their professional practices than they could have earned from non-professional work. Moreover, others, due to choice or factors beyond their control, may never practice their professions."

Michigan has already recognized that:

"Interests which are contingent upon the happening of an event which may or may not occur are not distributable. The party seeking to include the interest in the marital estate bears the burden of proving a reasonably ascertainable value; if the burden is not met, the interest should not be considered an asset subject to distribution." *Miller v Miller,* 83 Mich App 672, 677; 269 NW2d 264 (1978).

However, future earnings due to an advanced degree are not "too speculative". While a degree holder spouse might change professions, earn less than projected at trial, or even die, courts have

proved adept at measuring future earnings in such contexts as personal injury, wrongful death, and workers' compensation actions. In fact, pain and suffering, professional goodwill and mental distress, within these general legal issues, have similar valuation "problems". *Graham, supra,* 194 Colo 434 (Carrigan, J., *dissenting); Inman, supra;* Moore, *Should a Professional Degree Be Considered a Marital Asset Upon Divorce?,* 15 Akron L Rev 543, 547 (1982). We, therefore, do not believe that the *Miller* contingency caveat applies to future earnings.

The last argument is that these matters are best considered when awarding alimony rather than when distributing the property. See *Mahoney, supra,* 182 NJ Super 612-614. A trial judge is given wide discretion in awarding alimony. *Westrate v Westrate,* 50 Mich App 673; 213 NW2d 860 (1973), *lv den* 391 Mich 812 (1974). However, alimony is basically for the other spouse's support. *Kavanagh v Kavanagh,* 30 Mich App 636; 186 NW2d 870 (1971), *lv den* 384 Mich 843 (1971). The considerations for whether or not a spouse is entitled to support are different than for dividing the marital property. *McLain v McLain,* 108 Mich App 166; 310 NW2d 316 (1981), listed 11 factors that the trial judge is to consider in determining whether or not to award alimony. Some of these deal with the parties' financial condition and their ability to support themselves. If the spouse has already supported the other spouse through graduate school, he or she is quite possibly already presently capable of supporting him or herself. Furthermore, MCL 552.13; MSA 25.93 gives the trial court discretion to end alimony if the spouse receiving it remarries. We do not believe that the trial judge should be allowed to deprive the spouse who does not have an advanced degree of the fruits of the

marriage and award it all to the other spouse merely because he or she has remarried. Such a situation would necessarily cause that spouse to think twice about remarrying. See *O'Brien, supra; Hubbard, supra.*

Having determined that the defendant is entitled to compensation in this case, we must next determine how she is to be compensated. Two basic methods have been proposed—a percentage share of the present value of the future earnings attributable to the degree or restitution.

The Courts in *Inman, supra, Horstmann, supra,* and *DeLa Rosa, supra,* limited the recovery to restitution for any money given to the student spouse to earn the degree. While this solution may be equitable in some circumstances, we do not believe that restitution is an adequate remedy in this case. Limiting the recovery to restitution "would provide [the supporting spouse] no realization of [his or] her expectation of economic benefit from the career for which the education laid the foundation". Pinnell, *Divorce After Professional School: Education and Future Earning Capacity May Be Marital Property,* 44 Mo L Rev 329, 335 (1979). Clearly, in this case, the degree was a family investment, rather than a gift or a benefit to the degree holder alone. Treating the degree as such a gift would unjustly enrich the degree holder to the extent that the degree's value exceeds its cost. Loper, *Horstman v Horstmann: Present Right To Practice a Profession as Marital Property,* 56 Den L J 677, 689 (1979). We note that this case does not involve the situation where both parties simultaneously earned substantially similar advanced degrees during the marriage. In such

a situation, equity suggests that the parties have already amply compensated each other.[7]

The trial court in this case valued plaintiff's law degree at $20,000 and ruled that plaintiff must pay defendant $2,000 per year for ten years. We are unable to determine how this value was reached and, therefore, remand to the trial court to permit that court to revalue the degree in light of the following factors: the length of the marriage after the degree was obtained,[8] the sources and extent of financial support given plaintiff during his years in law school, and the overall division of the parties' marital property. In determining the degree's present value, the trial court should estimate what the person holding the degree is likely to make in that particular job market and subtract from that what he or she would probably have earned without the degree. *Recompense for Financing Spouse's Education: Legal Protection for the Marital Investor in Human Capital,* 28 Kan L Rev 379, 382-384 (1980). The ultimate objective in a property distribution is to be fair. *Darwish v Darwish,* 100 Mich App 758; 300 NW2d 399 (1980). Both parties may present new evidence on these matters and the degree's valuation.

One of the tragedies of this divorce, as in so many others, is that what used to be financially adequate is no longer enough. As the trial court aptly stated: "The tablecloths * * * will not cover both tables." We, therefore, note that the trial court has discretion to order that the payments be made on an installment basis as was done in *Moss, supra,* and *O'Brien, supra.* If the trial court should order such a payment schedule, the trial court

---

[7] We need not now address every possible factual scenario meriting either restitution or a percentage of the present value.

[8] Comment, 10 Cal West L Rev 607-612, *supra,* presents a formula for considering this factor which trial courts might find helpful.

should also consider the possibility of insuring these payments by a life insurance policy on plaintiff's life benefitting defendant.

Plaintiff has also appealed the overall property distribution while defendant has cross-appealed from the alimony determination. If the trial court alters the value placed on plaintiff's law degree, the property division and alimony award must also be reassessed. We, therefore, refrain from addressing these issues at this time.

Pursuant to GCR 1963, 726.1, we order plaintiff to pay defendant reasonable attorney fees for this appeal.[9] Costs to defendant.

Remanded with instructions to proceed in a manner consistent with this opinion. We do not retain jurisdiction.

---

[9] We will let the trial court determine what constitutes a reasonable attorney fee for this appeal.