DIEPHOUSE v DIEPHOUSE

Docket No. 63130. Submitted January 12, 1983, at Lansing.—Decided July 20, 1983.

Bonnie Diephouse secured a divorce from Timothy R. Diephouse in Midland Circuit Court. As part of the divorce judgment, Tyrone Gillespie, J., awarded plaintiff alimony in gross of $37,000 to be paid at the rate of $350 per month for 60 months with the balance being payable at the end of that period. The award of alimony in gross was based upon the disparity of incomes, the fact that plaintiff contributed to defendant's support while defendant sought an advanced educational degree and the fact that the education which defendant thereby received gave him a $700 per month advantage in the job market. Defendant appeals. *Held:*

The trial court properly awarded alimony in gross; however, review of the record convinces the Court of Appeals that the amount of alimony awarded was excessive. The total award of alimony in gross is reduced to $23,100 payable in 66 monthly payments of $350.

Affirmed in part, reversed in part.

1. Divorce — Alimony — Property Settlement.

A determination as to alimony and property division necessitates consideration of: (1) the duration of the marriage, (2) contributions of the parties to the joint estate [sources of property], (3) age, (4) health, (5) station in life, (6) necessities and circumstances, and (7) earning ability of the parties.

---

References for Points in Headnotes

[1] 24 Am Jur 2d, Divorce and Separation § 630 *et seq.*

Adequacy of amount of money awarded as permanent alimony where divorce is or has been granted. 1 ALR3d 123.

Excessiveness of amount of money awarded as permanent alimony where divorce is or has been granted. 1 ALR3d 6.

[2] 4 Am Jur 2d, Appeal and Error § 135.

[3] 4 Am Jur 2d, Appeal and Error § 137.

[4] 24 Am Jur 2d, Divorce and Separation § 632.

Spouse's professional degree or license as marital property for purposes of alimony, support, or property settlement. 4 ALR4th 1294.

2. DIVORCE — APPEAL.

> A divorce judgment, being equitable in nature, is reviewed by the Court of Appeals *de novo;* while the Court of Appeals must exercise its independent judgment in reviewing the evidence, the findings and decision of the trial court will not be interfered with unless the Court of Appeals is convinced that it would have reached a different conclusion.

3. DIVORCE — ALIMONY — APPEAL.

> An award of alimony is within the discretion of the trial court; the Court of Appeals is reluctant to reverse an award of alimony absent a showing of abuse of discretion by the trial court.

4. DIVORCE — ALIMONY — FUTURE EARNING CAPACITY.

> A trial court may award alimony in gross based upon the expected future earnings of a party in a divorce where there is a disparity in earnings and the person receiving the alimony in gross contributed to the securing of an education by the other party such that the income potential of that party was enhanced.

*Schneider, Handlon & Gerisch* (by *Richard M. Handlon),* for plaintiff.

*Sinclair, Clulo & McCormick* (by *Paul J. Clulo),* for defendant.

Before: D. E. HOLBROOK, JR., P.J., and CYNAR and H. W. MOES,* JJ.

PER CURIAM. Defendant appeals from a March 5, 1982, judgment of divorce, challenging the lower court's award of alimony in gross. Plaintiff and defendant were married on July 31, 1976. Plaintiff, at that time, was a certified dental assistant, while defendant had just received his B.A. degree in chemistry. Following their marriage, the parties moved to Ann Arbor, Michigan, so that defendant could begin his doctorate level studies as a chemist. Plaintiff became employed full-time as a dental

* Circuit judge, sitting on the Court of Appeals by assignment.

assistant. During this same period of time, defendant was a teaching assistant and received fellowship assistance.

In December 1980, when defendant was finishing his doctoral thesis, he announced that he would not be living with plaintiff in a home they had recently purchased. Plaintiff testified that she was unaware of any serious problems in the marriage until this announcement. Following the announcement, the parties have lived separately with the exception of a few interim periods where they stayed together as roommates. Defendant removed himself from the home permanently in March 1981. The parties remained separated until plaintiff filed this action on August 17, 1981.

The parties bought a house in Midland, paying $65,000, with a $12,000 down payment. Plaintiff's parents contributed $10,000 toward the down payment, and $2,000 was paid by the parties. The house payments are $598 per month. Defendant made the house payments from February 1981, when they moved in, until about October; and since that time, defendant has paid $400 a month for a number of months.

The parties stipulated to a property settlement whereby plaintiff was to receive the marital home, its contents and her 1978 Toyota automobile and defendant was to receive his 1981 Saab automobile and personal property. In addition to this property settlement, the trial court awarded plaintiff the sum of $37,000 as alimony in gross. This alimony was payable at the rate of $350 per month for 60 months beginning March 1, 1982, and ending March 1, 1987, at which time the balance of the $37,000 was to be paid in full. Defendant, on appeal, has challenged the propriety of this award.

This Court has considered similar issues in *Moss*

*v Moss,* 80 Mich App 693; 264 NW2d 97 (1978), *lv den* 402 Mich 946 (1978), and *Vaclav v Vaclav,* 96 Mich App 584; 293 NW2d 613 (1980). The trial court cited these cases as precedent for its ability to consider defendant's education as a basis for its award of alimony in gross. The court also cited *Evans v Evans,* 98 Mich App 328; 296 NW2d 248 (1980), *lv den* 410 Mich 884 (1981), and *Holbern v Holbern,* 91 Mich App 566; 283 NW2d 800 (1979), as providing precedent for the proposition that alimony could be paid on future earnings. Following its citation of authority, the court found:

"Clearly it is the policy of our courts to allow alimony on future earnings where the divorced spouse contributed to the potential for the earnings.

"The factors considered by the court are:

"1. The marriage in this case was only five years duration and the parties are relatively young.

"2. The plaintiff contributed at least $16,000 more to the marriage than did the defendant.

"3. The breakdown of the marriage was not for any infidelity or wrongdoing, but it was the decision of the defendant to terminate the marriage.

"4. There is a disparity in income of plaintiff and defendant and this is certain to increase.

"5. Defendant's education has given him a starting advantage in his present employment of $700 a month.

"6. Plaintiff's income is not sufficient to carry the house payments of the marital home, and she may attempt to obtain further education.

"The court will then order alimony in gross in the amount of $37,000 to be paid to the plaintiff at the rate of $350 for 60 months on the first day of each month until March 1, 1987. On March 1, 1987, the balance of $16,000 will be paid, if not sooner paid. No interest will be paid on this judgment so long as the payments are currently made. In event of any delinquency, statutory interest as on a judgment will be paid."

The lower court's power to award alimony is based upon MCL 552.23; MSA 25.103.

"Any determination as to alimony and property division necessitates an examination of '(1) duration of the marriage, (2) contributions of the parties to the joint estate [sources of property], (3) age, (4) health, (5) station in life, (6) necessities and circumstances and (7) earning ability' of the parties." *Holbern, supra,* p 569, quoting from *Charlton v Charlton,* 397 Mich 84, 95, fn 5; 243 NW2d 261 (1976).

In examining the trial court's award of alimony, its decision must stand upon its findings when compared to these factors. This Court, however, is not limited to the trial court's findings.

A divorce action is equitable in nature. Thus, when a judgment is presented for appellate review, the review is *de novo. Graybiel v Graybiel,* 99 Mich App 30, 33; 297 NW2d 614 (1980). This Court must exercise its independent judgment in reviewing the evidence. *Graybiel,* p 33. Because the trial court has had close contact with the parties, this Court, however, is inclined to give "grave consideration" to findings made by the trial court, *Hensley v Hensley,* 357 Mich 3, 5-6; 97 NW2d 615 (1959), and will not interfere with the decision unless it is convinced it would have reached a different conclusion if it were in the trial court's place. *Paul v Paul,* 362 Mich 43, 47; 106 NW2d 384 (1960); *Simmons v Simmons,* 58 Mich App 480, 482; 228 NW2d 432 (1975). Each case of alimony must be decided on its unique facts. *Butgereit v Butgereit,* 8 Mich App 246, 249; 154 NW2d 612 (1967).

It is also equally well settled, however, that an award of alimony is within the discretion of the trial court. *Wilcox v Wilcox (On Remand),* 108 Mich App 488, 494; 310 NW2d 434 (1981). For this

reason, some panels of this Court are reluctant to reverse an award of alimony absent a trial court's abuse of its discretion. *Ripley v Ripley,* 112 Mich App 219, 226-227; 315 NW2d 576 (1982); *York v York,* 113 Mich App 306, 309; 317 NW2d 604 (1982); *Kurtz v Kurtz,* 34 Mich App 34, 35; 190 NW2d 689 (1971), *lv den* 386 Mich 755 (1971). In this case, this Court's primary consideration is whether the trial court abused its discretion by applying the precedent of *Moss* and *Vaclav* to defendant's education obtained during marriage.

The trial court expressly recognized its right to award alimony based upon future earnings. Defendant challenges the court's right to make such an award, and, in particular, challenges the authority cited by the court to support this award. Regardless of the propriety of the authority cited by the trial court, there is authority for its award based upon defendant's increased earning potential due to his education. In *Vaclav,* this Court based its award, in part, on the husband's "exceedingly high income potential". *Vaclav,* p 591.

In addition to the factors considered by the trial court, the exhibits disclosed that defendant earned about $30,876 annually as compared to plaintiff's $8,820 at the time of trial. Although the parties were married only five years, it is apparent that defendant used this period of time as a springboard to allow him to obtain an education while enjoying a monetarily stable environment as supplied by his spouse.

Defendant testified that there had been little communication between the parties and that he personally felt plaintiff had not been supportive of him during his schooling and, particularly, during the period of his thesis writing. The trial court found that a failure on the part of both parties to

adequately communicate with each other was a contributing cause of the marriage breakdown. It is noteworthy, however, and, fairly considered by the trial court, that defendant waited until he had finished his thesis and was enjoying the benefit of a well-paying job before leaving the marital home. The trial court justifiably found defendant's education had given him a starting advantage in his present employment of $700 per month.

While the trial court awarded alimony in gross in *Vaclav* and *Moss,* the educational asset in each case was a medical degree. In the matter before us, the parties were married for about five years. Plaintiff is 26, and defendant is 27 years old. Both are physically healthy and capable of supporting themselves. There are no children. Defendant is a chemist, an employee working at the pleasure of his employer.

The trial court did not abuse its discretion by making an award of alimony in gross. It is the opinion of this Court, however, that the order of alimony in gross in the amount of $37,000 was unreasonable under the circumstances of this case. This Court is convinced that, had it occupied the trial court's position, it would have awarded a lower amount of alimony in gross. The trial court is ordered to reduce the amount of the alimony in gross award from $37,000 to $23,100, to be made payable at the rate of $350 per month for 66 months, commencing March 1, 1982. No interest will be charged as long as payments are currently made; otherwise, statutory interest may be added.

Affirmed in part and reversed in part.