RIPLEY v RIPLEY

Docket No. 55415. Submitted October 6, 1981, at Marquette.—Decided
January 6, 1982.

Mary Jane Ripley was granted a divorce from Patrick J. Ripley,
Chippewa Circuit Court, Robert A. Wood, J. Plaintiff appeals
from the division of property portion of the judgment of di-
vorce. *Held:*

The trial court made no findings of fact in support of its
division of property. The Court of Appeals, in accordance with
its *de novo* review in divorce cases and after review of the
record, amends the property settlement portion of the judgment
of divorce to reflect the value of the defendant's interest in the
pension fund and to insure that the debts of the plaintiff
incurred in the rehabilitation of the marital home awarded to
defendant would be assumed by the defendant.

Reversed and remanded for entry of a modified judgment.

1. DIVORCE — APPEAL — STANDARD OF REVIEW.

Divorce cases are reviewed by the Court of Appeals *de novo;*
however, the Court of Appeals will not substitute its judgment
for that of the trial court absent an abuse of discretion.

2. DIVORCE — DIVISION OF PROPERTY.

The division of property in a divorce action is not governed by
any rigid rules or mathematical formulas; the end sought is a
fair and equitable distribution under all the circumstances.

3. DIVORCE — APPEAL — DIVISION OF PROPERTY.

Factors to be considered by the Court of Appeals in reviewing the
division of property in a divorce action include the source of
the property, the length of the marriage, the needs of the
parties, the parties' earning abilities, and the cause of the
divorce.

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 868.
[2, 3] 24 Am Jur 2d, Divorce and Separation § 925.
[4, 5] 24 Am Jur 2d, Divorce and Separation § 928.

4. DIVORCE — MARITAL ASSETS — PENSION INTERESTS.

Claims against pension funds which have a reasonably ascertainable present value and are not a contingent or future possible benefit are a marital asset to be considered in making an equitable division of property upon divorce.

5. DIVORCE — MARITAL ASSETS — SAVINGS.

Savings, although accumulated from one party's earnings, are part of the marital assets to be considered in making an equitable division of property upon divorce.

*Peppler, Peppler & Peppler, P.C.,* for plaintiff.

*Elizabeth L. Askwith,* for defendant.

Before: N. J. KAUFMAN, P.J., and J. H. GILLIS and CYNAR, JJ.

CYNAR, J. Plaintiff appeals as of right from the trial court's marital property determination in a divorce granted on August 29, 1980. We reverse.

The parties were married on December 21, 1973. At the time of the marriage, defendant owned a cabin on Lake Superior which was encumbered by a $6,000 mortgage, the furniture in the cabin, a 1973 Toyota automobile, and a small savings account. Plaintiff owned a substantial amount of furniture and the proceeds of a land contract on property she had sold prior to the marriage. During the marriage, both parties were employed. Plaintiff earned approximately $61,000 during the marriage and defendant earned approximately $150,000.

In 1974, the parties purchased a house located at 1406 Ashmun in Sault Ste. Marie for $18,000, with a downpayment of $3,000. In 1979, they sold the Ashmun property and received proceeds of $12,500 after paying off the mortgage. Thereafter they purchased a house located at 1309 Park Street in Sault Ste. Marie for $55,000, with no

downpayment. At the time of trial, a balance of $54,000 remained owing on the mortgage on that property. Payments on the mortgage were $550 per month. Of the $12,500 in proceeds from the sale of the Ashmun Street property, $2,500 was used to pay off the remaining balance of the mortgage on the cabin. The remaining $10,000 was used for improvements to the Park Street property. An additional $13,000 worth of improvements were made to the Park Street property. It was undisputed that $5,000 of that amount was contributed by plaintiff and, although disputed, defendant contended he contributed $8,000.

The only items of furniture that were purchased during the marriage were a hutch, a couch, two bunk beds and a pine table.

Prior to the marriage, defendant executed a writing which stated the following:

"Please be advised that I have this day devised, bequeathed and in all other ways conveyed unto Mary Jane Mitchell [plaintiff herein] the property owned by me at Birch Point, Bay Mills Township, Michigan, more particularly described as * * *

"And that further, said Mary Jane Mitchell shall have unto herself, her heirs, legatees and devisees, the full use and ownership of the above described property until such time as shall be determined by her own wants, needs and debts. And that further, this instrument was done this 4th day of September 1973, by my own hand and in full recognizance and in full knowledge of the consequences thereof."

Defendant claimed that the above writing was a "will" and was revocable at any time. Although he testified he executed the document freely and voluntarily, the reason he did so was the result of the plaintiff's pleading and cajoling. He also testified that he executed the document as the result of the

plaintiff's threat to burn down the cabin if he did not do so.

Plaintiff did not claim title to the cabin. Rather, she contended that the cabin was worth a great deal and that her efforts were largely responsible for the increase in value. Plaintiff claimed that she had contributed financially and that she had performed a great deal of labor in redecorating and modernizing the cabin. Furthermore, the entire $6,000 mortgage on the cabin was paid off during the marriage, $2,500 of which came from the proceeds of the sale of the Ashmun Street property. Defendant contended that the cabin was worthless, that he was going to tear it down, and that the efforts the parties put into the cabin were wasted. The cabin property had a value for tax purposes of $13,000. Defendant testified that the unimproved value of the cabin property was $7,-500. He also testified that the cabin was insured for $10,000 but that he would not sell it for any price.

Defendant testified that the value of the Park Street house was $55,000 but that the low value was the result of depressed market conditions in the area. He stated that under normal circumstances it would sell for $68,000. No expert testimony was introduced concerning the value of either the cabin or the house.

At the time of the divorce, plaintfif was indebted in the amount of $15,000 (not including the mortgage on the Park Street house, for which she was a co-signer). Of the $15,000 debt, $13,000 related to a note which was executed to the Bank of Montreal. Of that amount, $9,000 represented principal, the remainder represented interest. Five thousand dollars of the principal related to the improvements on the Park Street house, as discussed

above. The remaining $4,000 was borrowed after the parties separated and was used to make house payments after defendant moved out of the Park Street house and to pay off other joint debts. Plaintiff contends that she made four house payments after the parties separated.

Plaintiff occupied the Park Street house at the time of trial and requested that she be awarded the house and its contents. She claimed that she would be able to make mortgage payments by renting several rooms to students attending a nearby college. It appears that at the time of trial the parties were behind in house payments and foreclosure had been threatened. At the time of the motion for a new trial in December, 1980, plaintiff was still occupying the Park Street house and a foreclosure sale was scheduled for January, 1981.

Defendant did not claim the Park Street house. Rather, he requested the court to order the house to be sold and the proceeds divided equally. Defendant was not willing to permit plaintiff to assume the mortgage because he did not believe that she could make the payments. Furthermore, he contended that if he permitted a nonveteran to assume the mortgage he would lose $54,000 worth of VA loan eligibility.

Defendant had a contributory retirement savings plan to which he had contributed approximately $10,000 during the marriage. Plaintiff claimed a share of those funds.

The court made no findings of fact. The trial judge simply sent a letter to the attorneys and the parties stating:

"Please prepare a judgment for divorce with the following being the property settlement of divorce.

"A. *To the Husband:*

"1. The husband is to receive the home presently occupied by Mrs. Ripley, no later than 30 days from the date of the judgment. Also, during this period of 30 days, the husband may list the home for sale.

"2. All personal property now in his possession.

"3. Volkswagen

"4. Dodge pickup

"5. Sailboat

"6. Desk located in home occupied by the wife at the present time.

"B. *To the Wife:*

"1. All furniture in the home which is not built-in. No carpet is to be removed if attached.

"2. 1976 Omega

"3. Her existing land contract in Canada.

"4. All personal property in her possession, except the desk.

"5. A sum of money in the amount of $3,000, which is to be a lien on the husband's cabin until paid. One thousand dollars of this is to be paid within 30 days and the balance within one year.

"C. Both parties are to be responsible for their own debts and obligations.

"D. No alimony is to be paid to either party.

"E. The plaintiff will be responsible for bills related directly to the house, such as electricity, telephone, etc.

"F. The defendant will be responsible for bills related to the house and property such as taxes, house payments, etc.

"Please prepare a judgment in connection with the above property conditions and the other terms of the divorce as set out on the date that testimony was taken."

The above letter by the trial court indicates that the property settlement in the judgment of divorce was to provide that defendant was to receive all personal property in his possession. The judgment of divorce so provides. Neither the said letter nor

the judgment of divorce specifically indicates that
the defendant received a Central Savings Bank
savings account of $300, a $400 stereo, $300 in
savings bonds, a $300 employee's savings account,
and TV sets valued at $300, nor was the $10,000
retirement account mentioned.

The property settlement provision in the judg-
ment of divorce awarded to the defendant: the
cabin and family home property, the Volkswagen,
the Dodge pickup truck, the 14-foot sailboat, and
all personal property in his possession.

The property settlement provision in the judg-
ment of divorce awarded to the plaintiff: the 1976
Omega vehicle, all household furniture, furnish-
ings, fixtures and equipment, and all personal
property in the family home except built-in equip-
ment, attached carpeting and a desk located
therein which was to be retained by the husband.
Additionally the plaintiff received all personal
property in her possession and $3,000 cash to be
paid to her by defendant.

Plaintiff filed a motion for a new trial, arguing
that the court's findings were against the great
weight of the evidence. The motion was heard on
December 18, 1980. At the motion hearing, plain-
tiff argued that the court had effectively awarded
everything that was accumulated during the mar-
riage to defendant while requiring plaintiff to pay
the bills associated with the purchase of those
assets. Plaintiff also argued that the court had
failed to consider plaintiff's labor in redecorating
the house and the cabin and her claim for a
portion of defendant's retirement savings fund.

The trial judge indicated that he had awarded
the Park Street house to defendant because he was
of the opinion that plaintiff was unable to make
the mortgage payments. He also indicated that he

had considered the other claims in making the award. The court did not make any findings concerning the various factors it considered in making the award.

GCR 1963, 517.1 provides the following:

"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment. It will be sufficient if the court makes brief, definite, and pertinent findings and conclusions upon the contested matters without over elaboration of detail or particularization of facts. If an opinion or memorandum decision is filed, it will be sufficient if the findings and conclusions appear therein. * * * Findings of fact shall not be set aside unless clearly erroneous. In the application of this principle regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses who appeared before it."

It is apparent that the trial court failed to make any findings of fact in connection with the judgment rendered herein.

MCL 552.19; MSA 25.99 provides in part the following:

"Upon the annulment of a marriage, a divorce from the bonds of matrimony or a judgment of separate maintenance, the court may make a further judgment for restoring to either party the whole, or such parts as it shall deem just and reasonable, of the real and personal estate that shall have come to either party by reason of the marriage, or for awarding to either party the value thereof, to be paid by either party in money."

Divorce cases are reviewed *de novo.* However, an appellate court will not substitute its judgment for that of the trial court absent an abuse of discre-

tion. *Kurtz v Kurtz,* 34 Mich App 34; 190 NW2d 689 (1971). The end sought in the division of property is a fair and equitable distribution under all of the circumstances. The division is not governed by any rigid rules or mathematical formulas. The factors to be considered include the source of the property, the length of the marriage, the needs of the parties, their earning abilities, and the cause of the divorce. *Charlton v Charlton,* 397 Mich 84; 243 NW2d 261 (1976), *Patrick v Patrick,* 99 Mich App 132; 297 NW2d 635 (1980).

The lower court made no findings concerning the above factors. The marriage lasted seven years and it was the second marriage for both parties. At the time of trial the defendant was making approximately $33,000 per year. He was obligated to pay $3,600 to support the children of his former marriage. Plaintiff's wages in 1979 were $11,718.59. She also received $164.72 each month from the sale of a home in Ontario that she had sold prior to the marriage; those payments were due to end in September, 1982. Defendant's health was excellent. Plaintiff testified that she was in poor health. She stated that she had spinal problems, arthritis and suffered from heart strain. At the time of trial plaintiff was 45 years old and defendant was 43. Defendant had a B.A. degree from Northern Michigan University and was employed as a customs supervisory inspector by the United States Customs Department. Plaintiff was employed during the day as an auditor for a Holiday Inn in the area and had an evening job as a clerk in a gift shop. Although it appears that defendant made most of the house payments and paid a large share of the household expenses during the marriage, plaintiff testified that she also contributed all of her income for the parties' joint support. She also testified that she did virtually all of the manual

labor associated with redecorating both the Ashmun Street property and the Park Street property. Defendant admitted that to be the case and also admitted that plaintiff had worked at redecorating the cabin. The only testimony concerning the cause of the divorce was plaintiff's statement that defendant drank approximately three-fourths of a quart of liquor each day. Defendant contended that the marriage broke down in part because he did not want to purchase the Park Street property since he did not believe the parties could afford it and he did so only because plaintiff agreed to pay $300 per month toward the mortgage. He claimed she failed to do so. He also stated that plaintiff ridiculed his job.

The court ordered each party to be responsible for their individual debts. Plaintiff owed approximately $15,000. Defendant owed approximately $9,000. Of the amount owed by plaintiff, $13,000 represented the amount she had spent on the Park Street house. Defendant alleged that $7,000 of his debts represented amounts he had expended on that property. The court awarded the Park Street house to defendant but did not require him to assume the $13,000 of debt that plaintiff had incurred with respect to that property. It was clear that virtually all of the improvements were fixtures and were not removed by plaintiff.

The court made no findings concerning the effect of the document plaintiff had executed prior to the marriage with respect to the cabin. The court did not award plaintiff anything with respect to the cabin property despite the uncontroverted testimony that the $6,000 mortgage was paid off during the marriage with joint funds and despite the fact that the plaintiff expended her own funds and labor in remodeling the cabin. Although defendant

said the cabin was worthless, he also indicated he would not sell it for any price because it had been in his family for many years. Defendant indicated that the value of the land in its unimproved condition was $7,500 and that the appraised value of the property with the cabin was $13,000.

Assuming the market to be depressed and that plaintiff was not in a position to make the mortgage payments of $550 per month, the trial court's ruling appears correct in awarding the Park Street property to defendant. The family home was two years old and the parties paid $55,000 for it. Plaintiff indicated the fair value to be between $55,000 and $60,000 and about $58,000 without the appliances which were not built-in. Further, defendant alleged that to permit plaintiff to assume the mortgage would have been unfair to defendant as it would have resulted in a loss of his future borrowing ability. In determining the amount of equity in the family home, the court appears to have included only the $54,000 mortgage balance, although uncontroverted evidence indicated that plaintiff borrowed some $13,000, which sum together with the $7,000 as contended by defendant was also expended on the family home. While the trial court did give consideration to what would be in the best interest of defendant under the circumstances, the same was not accorded to plaintiff when the court awarded the family home to defendant without defendant's having to assume any part of the plaintiff's $13,000 debt.

A pension fund that has a reasonably ascertainable present value and is not a contingent or future possible benefit is a marital asset to be considered in making an equitable division of property. *McCallister v McCallister,* 101 Mich App 543; 300 NW2d 629 (1980), *Evans v Evans,* 98 Mich App

328; 296 NW2d 248 (1980). Savings, although accumulated from one party's earnings, are in reality acquired from what would otherwise be income of the parties during the marriage and are properly a part of the marital assets. *Darwish v Darwish,* 100 Mich App 758; 300 NW2d 399 (1980), *Miller v Miller,* 83 Mich App 672; 269 NW2d 264 (1978).

There was no dispute that the defendant's pension fund had a reasonably ascertainable value. It was estimated the amount accumulated from contributions made by the defendant during the marriage was approximately $10,000. The trial court did not include the pension fund in the property settlement in the judgment of divorce.

After careful consideration of the record and with due consideration to the length of the marriage, the source of the property, the needs of the parties, their earning abilities, their respective health, and all other relevant factors, we amend the property settlement provision in the judgment of divorce, but only in the following manner. The $3,000 payment from defendant, Patrick Joseph Ripley, is increased to $5,000. A sum of $2,000 is to be paid within 30 days from the date of release of this opinion. In reference to the plaintiff's indebtedness on a note which was executed to the Bank of Montreal, it is ordered that the defendant is to assume payment on the plaintiff's indebtedness to the extent of $13,000 commencing to make payment or make reimbursement for payment made from the date of the divorce.

Reversed and remanded to the trial court for the issuance of a modified judgment in accordance with this opinion.