OLAH v OLAH

Docket No. 69107. Submitted December 8, 1983, at Grand Rapids.— Decided June 18, 1984.

Plaintiff, Sandor Olah, and defendant, Jolene L. Olah, were divorced on January 7, 1983, in the Allegan Circuit Court, George R. Corsiglia, J. At trial the defendant sought a share of the value of the plaintiff's medical degree and her reasonable attorney fees and costs. The trial court denied both requests. The court however awarded defendant the lump sum of $12,500 as permanent alimony to compensate her for her endeavors in supporting the parties while plaintiff continued his schooling and for her help in setting up his practice. The $12,500 was to be paid over a three-year period, in quarterly installments. Defendant appeals, advancing the issues of whether plaintiff's medical degree is marital property subject to division and whether defendant should be awarded a reasonable attorney's fee. *Held:*

1. A spouse who works and supports the mate while the mate pursues an education should be compensated. The Court of Appeals, however, does not adhere to the proposition that a degree is property and therefore a marital asset. An advanced degree has none of the attributes of property in the usual sense of that term.

2. The trial court's award of $12,500, under the circumstances of this case, was so low as to constitute an abuse of discretion. An equitable award of alimony would be $1,000 per month, from January, 1983, until the defendant completes her

REFERENCES FOR POINTS IN HEADNOTES

[1] 24 Am Jur 2d, Divorce and Separation § 898.

Spouse's professional degree or license as marital property for purposes of alimony, support, or property settlement. 4 ALR4th 1294.

[2] 24 Am Jur 2d, Divorce and Separation §§ 625, 653 *et seq.*

Adequacy of amount of money awarded as permanent alimony where divorce is or has been granted. 1 ALR3d 123.

[3] 5 Am Jur 2d, Appeal and Error § 868.

[4] 24 Am Jur 2d, Divorce and Separation § 870 *et seq.*

degree in computer science (it is assumed she will finish school in May or June of 1985, at the latest).

3. Under the circumstances of this case, an award for attorney fees should have been granted. $1,000 is therefore awarded for the defendant's attorney fees.

Affirmed as modified.

R. M. MAHER, P.J., concurred in the conclusion that the trial court abused its discretion in awarding defendant $12,500 in alimony. However, he wrote separately to note that Michigan is an equitable distribution jurisdiction, in which the classification of an item as either property or non-property is beside the point and not decisive in determining the best division of the parties' holdings upon divorce. He stated that, under the circumstances of this case, equity requires that both plaintiff and defendant be entitled to share in the fruits of plaintiff's medical degree. Therefore, while agreeing with the majority that $30,-000 is an equitable award, he took exception to awarding this sum as alimony, noting his concern that awarding this sum in terms of alimony payments may unfairly jeopardize defendant's recognized right to the money as the fruits of her labor. He would instead award the defendant $30,000 outright, but permit plaintiff to pay the sum in monthly installments, if necessary.

### OPINION OF THE COURT

1. DIVORCE — MARITAL ASSETS — EDUCATIONAL DEGREES.

The Court of Appeals does not adhere to the proposition that an educational degree is property and therefore a marital asset; an educational degree has none of the attributes of property in the usual sense of that term; the Court is of the opinion, however, that a spouse who works and supports the mate while the mate pursues an education should be compensated for such support and efforts where the parties thereafter divorce.

2. DIVORCE — ALIMONY.

An award of alimony is discretionary and should be based on the ability of either party to earn and the character and situation of the parties, and all the other circumstances of the case (MCL 552.23[1]; MSA 25.103[1]).

3. APPEAL — ABUSE OF DISCRETION.

A trial court's determinations are presumed to be correct and a reviewing court will not find an abuse of discretion unless the reviewing court is convinced that it would have reached a different result.

4. Divorce — Distribution of Holdings — Equity.

  *Michigan is an equitable distribution jurisdiction in which the classification of an item as either property or non-property is not decisive in determining the best division of the parties' holdings upon divorce; Michigan courts focus on the most equitable solution to dissolving the marriage and dividing among the respective parties what they have.*

*Scholten, Fant & Marquis* (by *R. Neal Stanton*), for plaintiff.

*Diann J. Landers* and *Curtis R. Witte,* for defendant.

Before: R. M. Maher, P.J., and R. B. Burns and J. G. Roskopp,* JJ.

R. B. Burns, J. This is a divorce action. At trial defendant sought a share of the value of the plaintiff's medical degree and her reasonable attorney fees and costs. The trial court denied both requests. Defendant appeals and we modify the judgment.

Plaintiff and defendant are 36 and 33 years old respectively. They were married September 6, 1969, in Ames, Iowa. Plaintiff filed his complaint on August 6, 1981. The parties ceased living together on December 15, 1981.

Plaintiff received his undergraduate degree in 1968 and at the time of the parties' marriage was employed as a chemical engineer at a salary of $10,000 a year. Prior to her marriage, defendant was pursuing her undergraduate studies at Iowa State University. When she married plaintiff, she transferred to Western Illinois University in Ma-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

comb, Illinois, because it was the nearest school to Keokuk, Iowa, where her husband was employed. During the next 1-1/2 to 2 years of marriage, the couple was supported by the plaintiff's salary, while the defendant continued her education. Defendant received her B.S. in zoology in 1971. She was unable to find employment as a zoologist, so she took a job as a ward clerk at a hospital. This job was contingent upon her entering a student nursing program, but defendant testified that she never expected to receive a nursing degree.

In 1972 plaintiff decided to go to medical school. In March, 1972, the couple returned to Ames, Iowa, so that plaintiff could re-enter school to complete the necessary premed requirements. Plaintiff did not work during the time he completed the premed requisites, but during this time defendant did work, first as a night messenger in a hospital and then as a research technician at a veterinary college.

Plaintiff was then accepted into osteopathic school in Kirksville, Missouri. The couple moved to Kirksville and remained there until plaintiff received his D.O. degree in June, 1977. Defendant obtained a job as a technician at the school and worked there until plaintiff received his degree. Plaintiff was not employed while in school and, other than a $13,000 tuition loan which plaintiff obtained, the couple was supported by defendant.

In 1977 the couple moved to Grand Rapids, Michigan, so that plaintiff could perform a one-year internship at Grand Rapids Osteopathic Hospital. During this year the couple was supported by plaintiff's income as an intern and defendant prepared for plaintiff's medical practice, arranging financial matters, purchasing office equipment, etc. Defendant testified that she did most of the prepa-

rations since plaintiff was occupied with the medical work of an intern.

For the first year of plaintiff's practice, defendant worked in plaintiff's office as many hours as her husband worked. She performed numerous jobs, including: (1) insurance work, (2) billing, (3) equipment maintenance and operation, (4) drug inventories, (5) certain office procedures, *e.g.,* taking blood pressures, some gynecological work, lab work, receptionist duties and referral of patients to specialists. After the first year of plaintiff's practice, the number of hours worked by defendant decreased.

The parties experienced marital difficulties and on December 15, 1981, defendant returned to Nevada, Iowa, to live with her parents. At the time of trial, defendant was attending Iowa State University and still residing with her parents in Nevada, Iowa. She has an additional two years of schooling to complete her computer science studies. From August, 1981, through the trial, plaintiff made certain payments to defendant including $100 a week temporary alimony by court order.

The couple acquired few assets during the course of their marriage. Around May, 1978, they purchased a home for $69,500. A first mortgage from First Michigan Bank was obtained with a $15,000 down payment and a second mortgage was taken for the remainder from Hamilton Farm Bureau. Plaintiff additionally borrowed $15,000 to $20,000 from his parents to make improvements on the basement of the house. After the improvements were completed, plaintiff's parents came to live in the basement, but moved out after three months when the marriage began deteriorating.

The couple purchased a 1978 Blazer through plaintiff's medical business which was valued at

$8,494.61, less depreciation of $6,120. The couple also owned a 1973 Chevrolet Vega, title to which was transferred to defendant on November 17, 1982.

Defendant estimated that she would require $12,000 a year for her expenses, at least for the next two years while she was completing school. The main dispute at trial concerned the value of plaintiff's medical license and practice. As to the plaintiff's practice, the court stated:

"Now, you are asking me what Dr. Olah's practice is worth, I don't know. I guess I am taking into consideration time and effort the parties have put into it. I don't know, you can just say, well, I just worked those four years so he would get started. You know, Dr. Olah happened to work too. If sombody approves supporting something, is a party entitled to one-half of it because they sort of supported the spouse with moral support and monetary support? That is a hard question for me to answer. I guess basically I don't think so. Obviously it allowed that spouse to continue their education due to the economic wherewithal to continue, but that alone isn't sufficient.

"I am going to award a lump sum amount by way of permanent alimony to this defendant, to compensate her for her endeavors in supporting these parties while Mr. Olah continued in school and setting up his practice until they separated, the sum of $12,500.00; and that should be paid over a three-year period, quarterly installments."

On appeal, the defendant states the issues as follows:

I. Whether appellee's medical degree is marital property subject to division.

II. Whether appellant should be awarded a reasonable attorney's fee.

In *Moss v Moss,* 80 Mich App 693, 695; 264 NW2d 97 (1978), this Court stated:

"It was impossible to award the wife a portion of the husband's medical degree, the only substantial asset acquired during coverture. An award of $15,000 fairly represents the wife's contribution to the acquisition of that asset, financial and otherwise."

In *Watling v Watling,* 127 Mich App 624, 627-628; 339 NW2d 505 (1983), Judge T. M. Burns, who also authored *Woodworth v Woodworth,* 126 Mich App 258; 337 NW2d 332 (1983), stated:

"In the present case, we believe that the trial court correctly declined to award plaintiff a percentage of the value of defendant's degree in dentistry. * * * [P]laintiff by now has her own advanced degree. While a master's in education may not be as financially remunerative as a degree in dentistry, plaintiff's degree was in the field chosen by her. * * * [D]efendant's current salary and earning capacity are to a large extent the product of skill and experience he has acquired as a dentist rather than the product of what he learned during his education."

In our opinion, a spouse who works and supports the mate while the mate pursues an education should be compensated. However, we do not adhere to the proposition that a degree is property and therefore a marital asset. We believe as stated in *Graham v Graham,* 194 Colo 429, 432; 574 P2d 75, 77 (1978):

"An educational degree, such as an M.B.A., is simply not encompassed even by the broad views of the concept of 'property.' It does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned,

sold, transferred, conveyed or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. In our view, it has none of the attributes of property in the usual sense of that term."

An award of alimony is discretionary and should be based on "the ability of either party [to earn] and the character and situation of the parties, and all the other circumstances of the case". MCL 552.23(1); MSA 25.103(1).

The trial court's determinations are presumed to be correct and a reviewing court will not find an abuse of discretion unless the reviewing court is convinced that it would have reached a different result. This Court is convinced that it would have reached a different result if it had been in the trial court's position.

The trial judge awarded the defendant a lump sum by the way of permanent alimony of $12,500, payable in quarterly installments over a three-year period. This was to compensate her for her support and efforts while the plaintiff was in medical school and setting up his practice. The defendant testified in December of 1982 that she had two years left in which to complete her degree in computer science. From her statement we assume that she will complete her course in May or June of 1985.

Plaintiff's income for both 1981 and 1982 exceeded $50,000 each year. The defendant should not have to work while attending college. Nor should she be restricted to the living standards of the parties during past years.

We feel that the trial court's award of $12,500,

under the circumstances of this case, was so low as to constitute an abuse of discretion. We feel that an equitable award of alimony would be $1,000 per month, from January, 1983, until the defendant completes her degree in computer science. From defendant's previous testimony we assume that she will finish school in May or June of 1985 at the latest.

We also think that under the circumstances of this case, an award for attorney fees should have been granted. We hereby award defendant attorney fees in the amount of $1,000.

The remaining portions of the judgment of divorce not discussed here shall remain in full force and effect.

Affirmed as modified.

J. G. ROSKOPP, J., concurred.

R. M. MAHER, P.J. *(concurring).* I write separately because, although I agree with the majority that the trial court abused its discretion in awarding defendant $12,500 in alimony, I reach this conclusion by another route.

The majority states that "a spouse who works and supports the mate while the mate pursues an education should be compensated," but rejects the conclusion that an advanced degree is property and therefore a marital asset. I agree with this Court's conclusion in *Woodworth v Woodworth,* 126 Mich App 258, 263; 337 NW2d 332 (1983), that "whether or not an advanced degree can physically or metaphysically be defined as 'property' is beside the point". This is an equitable distribution jurisdiction, in which classification of an item as either property or non-property is not decisive in determining the best division of the parties' holdings on divorce. "Courts must instead focus on the

most equitable solution to dissolving the marriage and dividing among the respective parties what they have." *Woodworth, supra,* 126 Mich App 263.

The facts of this case present an even more cogent example of two people working together towards a family goal than did the facts in *Woodworth* itself. As stated in *Woodworth,* "[t]he degree holder has expended great effort to obtain the degree not only for himself or herself, but also to benefit the family as a whole. The other spouse has shared in this effort and contributed in other ways as well, not merely as a gift to the student spouse nor merely to share individually in the benefits but to help the marital unit as a whole". 126 Mich App 261. Here, while plaintiff studied for his doctor of osteopathy degree, defendant worked as virtually the sole financial supporter of the family. Even after plaintiff began his internship and began to earn again, defendant's life was centered on plaintiff's medical career. During this period defendant prepared for plaintiff's medical practice, arranging financial matters and purchasing office equipment. Finally, even after plaintiff began to practice medicine, defendant worked in plaintiff's office as many hours as plaintiff did, although without a salary. Under these circumstances, equity requires that both plaintiff and defendant be entitled to share in the fruits of the medical degree. *Woodworth, supra; Watling v Watling,* 127 Mich App 624; 339 NW2d 505 (1983); *Thomas v Thomas,* 131 Mich App 830; 346 NW2d 595 (1984).

It is because of this that I take exception to the majority's award of a total of $30,000 in alimony. I agree that $30,000 is an equitable award in light of defendant's own expert's testimony that plaintiff would receive over his lifetime only $140,000

after taxes more as a D.O. then he would have received in his former profession. See the valuation discussion in *Woodworth,* 126 Mich App 269. However, I am concerned that awarding this sum in terms of alimony payments may unfairly jeopardize defendant's recognized right to this money. This consideration was also addressed by the *Woodworth* Court:

"A trial judge is given wide discretion in awarding alimony. *Westrate v Westrate,* 50 Mich App 673; 213 NW2d 860 (1973), *lv den* 391 Mich 812 (1974). However, alimony is basically for the other spouse's support. *Kavanagh v Kavanagh,* 30 Mich App 636; 186 NW2d 870 (1971), *lv den* 384 Mich 843 (1971). The considerations for whether or not a spouse is entitled to support are different than for dividing the marital property. *McLain v McLain,* 108 Mich App 166; 310 NW2d 316 (1981), listed 11 factors that the trial judge is to consider in determining whether or not to award alimony. Some of these deal with the parties' financial condition and their ability to support themselves. If the spouse has already supported the other spouse through graduate school, he or she is quite possibly already presently capable of supporting him or herself. Furthermore, MCL 552.13; MSA 25.93 gives the trial court discretion to end alimony if the spouse receiving it remarries. We do not believe that the trial judge should be allowed to deprive the spouse who does not have an advanced degree of the fruits of the marriage and award it all to the other spouse merely because he or she has remarried. Such a situation would necessarily cause that spouse to think twice about remarrying." 126 Mich App 267-268.

I would therefore award defendant $30,000 outright, but permit plaintiff to pay the sum in monthly installments, if necessary. In this way, defendant's right to the money as the fruits of her labor would be recognized and protected, while plaintiff would not be placed under an intolerable financial burden.