THOMAS v THOMAS (AFTER REMAND)

Docket No. 89637. Submitted October 8, 1986, at Lansing. Decided
    December 7, 1987.

Plaintiff, Claude Thomas, was granted a divorce from defendant,
    Park A. Thomas, in Ingham Circuit Court, Paul R. Mahinske,
    J. The court held that plaintiff's law school education was not a
    marital asset. Defendant appealed. The Court of Appeals re-
    versed, holding that the law degree was a marital asset and
    remanding for a determination of the value of that asset and
    the amount of such asset that should be distributed to defen-
    dant. See 131 Mich App 830 (1984). The Supreme Court af-
    firmed the decision of the Court of Appeals with respect to the
    marital asset issue but reversed the decision of the Court of
    Appeals on an alimony question which had also been raised.
    See 419 Mich 942 (1984). On remand, the trial court, Timothy
    M. Green, J., valued the law degree, using a restitution of
    funds method, at $27,120 and awarded defendant one-half of
    that amount. Defendant appealed.

    The Court of Appeals *held:*

    1. While the restitution of funds method is one method which
    can be used to determine a value of a postgraduate degree for
    marital asset purposes, equity demands under these circum-
    stances that the share of present value of future earnings made
    possible by the degree method be used in this case.

    2. Since the valuation of a postgraduate degree is tied into
    the division of the other marital assets, the evidence as to the
    value of the future earnings that was available at the time of

REFERENCES

Am Jur 2d, Divorce and Separation §§ 897-899, 915-929, 943.

Proper date for valuation of property being distributed pursuant to
    divorce. 34 ALR4th 63.

Spouse's professional degree or license as marital property for
    purposes of alimony, support, or property settlement. 4 ALR4th
    1294.

Evaluation of interest in law firm or medical partnership for
    purposes of division of property in divorce proceedings. 74 ALR3d
    621.

Accountability for good will of professional practice in actions
    arising from divorce or separation. 52 ALR3d 1344.

the 1981 division of the marital assets, rather than the evidence that was available at the time of the 1985 hearing on remand, should be used.

3. Using the share of future earnings method and the 1981 evidence with respect to future earning, the present value of those future earnings is $337,664. Defendant, under these circumstances and in view of the division of the other marital assets, is entitled to an award of one-eighth of those future earnings or $42,208.

4. The award of the trial court of attorney fees incurred during the prior appeals to the Court of Appeals and Supreme Court did not constitute an abuse of discretion. The defendant, however, shall be entitled to an award of attorney fees incurred in this appeal. The trial court, in the exercise of its discretion, shall award appropriate attorney fees incurred in this appeal.

Affirmed in part, reversed in part and remanded.

1. DIVORCE — MARITAL PROPERTY — POSTGRADUATE DEGREES.

The interest of the nonstudent spouse in a postgraduate degree for the purpose of the division of marital property in a divorce may be computed either as a percentage share of the present value of future earnings made possible by the degree or by restitution of the funds contributed by the nonstudent spouse; the trial court should use the method of computation that, under the particular circumstances, achieves an equitable result.

2. DIVORCE — MARITAL PROPERTY — POSTGRADUATE DEGREES — EVIDENCE.

Decisions regarding the time of valuation of property in a divorce action are matters within the discretion of the trial court; it is not an abuse of discretion for a trial court to limit evidence as to the potential increased income attributable to a postgraduate degree to that evidence which was available at the time of the original division and award of the other assets of the marriage even where the decision on an award reflecting the division of the value of the postgraduate degree takes place at a later date.

3. DIVORCE — MARITAL PROPERTY — POSTGRADUATE DEGREES — DIVISION OF PROPERTY.

The factors to be considered in determining the interest of a nonstudent spouse in the marital asset arising out of increased future earnings resulting from the acquisition of a postgraduate degree are: the length of the marriage after the degree was obtained, the sources and extent of financial support given the student spouse during the years the degree was being obtained, and the overall division of the parties' marital property.

*Reid, Reid, Perry, Lasky, Hollander & Chalmers,
P.C.* (by *Joseph D. Reid* and *Nan Elizabeth Casey*),
for plaintiff.

*Diane L. Bernick,* for defendant.

### AFTER REMAND

Before: R. M. MAHER, P.J., and D. E. HOLBROOK,
JR., and M. R. STEMPIEN,* JJ.

D. E. HOLBROOK, JR., J. In this appeal from
divorce proceedings, the primary issue presented is
the proper valuation of a law degree and license to
practice law as marital property for the purpose of
effecting an equitable distribution to the nonstu-
dent spouse in the aftermath of the dissolution of
the marriage. In a prior appeal from the same
proceedings, another panel of this Court reversed
the trial court's determination that the degree had
no intrinsic value and remanded for evaluation of
the degree. *Thomas v Thomas,* 131 Mich App 830;
346 NW2d 595 (1984). The Supreme Court reversed
the decision of this Court on the issue of alimony,
but denied leave to appeal with respect to this
Court's holding that the degree was a marital
asset. *Thomas v Thomas,* 419 Mich 942; 355 NW2d
617 (1984). On remand, the trial court valued the
law degree in the amount of $27,120 and awarded
defendant, the nonstudent spouse, one-half of that
amount.

At the divorce trial, the following evidence was
adduced pertinent to the value of the law degree:
The parties were married in March, 1966, and
separated in August or September, 1979. At the
time of their marriage, plaintiff was employed as a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

production worker by the Fisher Body Division of General Motors. This employment continued through September, 1969, except for an interlude when plaintiff worked for the State Highway Department as a student technician. After he left Fisher Body, plaintiff worked as a patrol officer with the Lansing Police Department until 1977, earning either $8,400 or $8,700 per year at the outset and $15,000 per year at the time of his departure from the police department. At the time of the marriage, defendant worked full-time as a cosmetologist, although her hours were reduced later in order to care for the parties' children. Defendant testified that, as of the time of trial, her cosmetology business grossed $75 to $100 per week, before deduction of work-related expenses.

Plaintiff was a high school graduate at the time of the marriage. In January, 1968, he enrolled in Lansing Community College and continued there until June, 1969. From January, 1970, to June, 1972, he attended Michigan State University. In January, 1973, plaintiff matriculated at Cooley Law School and commenced studies that culminated in his earning a law degree in January, 1976. Plaintiff financed his studies through a combination of VA benefits, loans, and his employment. The VA benefits were sufficient to pay for all educational expenses plus some living expenses for the periods that he received them, but these benefits were terminated halfway through the course of his law studies. Both parties worked part-time jobs from time to time. Both parties also engaged in domestic chores and the care of their four children, although defendant assumed most of these duties. During plaintiff's enrollment in law school, he cared for the children on Saturdays while defendant worked, but defendant assumed most of the household tasks and child care responsibilities.

Plaintiff commenced his legal career with the Ingham County Prosecutor's Office in January, 1976, at a salary of about $10,600 per year. At the time of his departure to assume his new responsibilities as a judge, he was earning a salary of $26,900 per year. He was elected as a district judge in 1980. His starting salary was about $46,000. At the time of the divorce trial, he was earning about $51,900 per year.

On remand, the trial court purported to apply the restitution method for computing the value of the law degree. The court found that plaintiff's change in employment from Fisher Body to the Lansing Police Department resulted in a net loss of $27,120 to the family during the period of time from 1969 to 1976 while plaintiff was engaged in academic studies. The court fixed the value of the law degree at this amount and decided that defendant was entitled to one-half of this value. Defendant was awarded $13,550, payable in monthly installments over a five-year period.

The division of marital property is committed to the sound discretion of the trial court. On appeal to this Court, relief may be granted only if we are convinced that we would have reached a different result if we had occupied the position of the trial court. The trial court's findings of fact, including its valuation of marital assets, may not be disturbed by this Court unless those findings are clearly erroneous. *Kowalesky v Kowalesky,* 148 Mich App 151, 155; 384 NW2d 112 (1986), lv den 425 Mich 876 (1986). We have applied this standard to the trial court's award for the law degree and conclude that reversal is required.

In *Woodworth v Woodworth,* 126 Mich App 258; 337 NW2d 332 (1983), lv den 419 Mich 856 (1984), this Court discussed two methods of compensating the nonstudent spouse for his or her interest in an

advanced degree: (1) a percentage share of the present value of future earnings made possible by the degree, or (2) restitution for funds contributed by the nonstudent spouse toward the acquisition of the degree. Even if it is assumed that the restitution method was properly utilized in the instant case, we think that the trial court's calculation was erroneous. Given that plaintiff was the primary source of familial support during the pendency of his schooling and the lack of any evidence suggesting that defendant made substantial monetary contributions toward plaintiff's education, a proper application of the restitution method suggests that defendant's recovery would be negligible. Although the trial court purported to apply restitution principles, it is difficult to see how its calculation reflected an attempt to return to defendant what she had contributed financially toward the law degree.

However, we need not decide the proper application of restitution principles because we conclude, in keeping with the principles of *Woodworth,* that defendant's compensation for the law degree should be computed as a percentage of the present value of the future earnings. The application of this same method in *Woodworth* was premised upon the Court's perception that the law degree was the "end product of a concerted family effort" and the "result of mutual sacrifice and effort" by both parties. *Id.,* pp 260, 261. The Court further observed that the judicial remedy upon dissolution of a marriage was to compensate the nonstudent spouse's expectation in realizing the deferred rewards of the student spouse's education, an expectation that would otherwise be frustrated by the divorce. The underlying concern is to achieve a remedy that is consistent with fairness and equity. In the instant case, we think that it is important

for the property settlement to recognize defendant's intangible, nonpecuniary contributions. Although we do not read *Woodworth* as compelling compensation for the loss of future earnings in every instance, see *Watling v Watling,* 127 Mich App 624, 625-628; 339 NW2d 505 (1983), we conclude that the method of compensation used by the trial court failed to achieve an equitable result.[1] Rather than remand for another evaluation of the law degree, we exercise de novo review of the evidence to decide upon an appropriate award. See *Diephouse v Diephouse,* 127 Mich App 526; 339 NW2d 42 (1983); MCR 7.216(A)(7).

As an initial matter, we note that defendant offered expert testimony of the present value of future earnings attributable to the degree on two factual bases. The expert made this calculation on the basis of facts known at the time of trial in 1981 and also, on a separate record, on the basis of facts known at the time of the 1985 remand hearing, which took account of occurrences after the 1981 trial. Questions of the admissibility of evidence are committed to the sound discretion of the trial court. *People v Solak,* 146 Mich App 659, 673; 382 NW2d 495 (1985). The question of the determination of the proper time for valuation of a marital asset is also committed to the discretion of the trial court. *Curylo v Curylo,* 104 Mich App 340, 351-352; 304 NW2d 575 (1981). See also *Schamber v Schamber,* 41 Mich App 589; 200 NW2d 454 (1972). One of the considerations having an impact on the making of a proper award for an advanced degree is the division of the parties' other marital

---

[1] We are cognizant that a split exists in this Court as to the propriety of treating an advanced degree as a marital asset. Compare *Woodworth, supra,* with *Olah v Olah,* 135 Mich App 404; 354 NW2d 359 (1984). We need not address the conflict in this case because the *Woodworth* approach is the law of the case. *CAF Investment Co v Saginaw Twp,* 410 Mich 428, 454; 302 NW2d 164 (1981).

property. *Woodworth, supra,* p 269. Since that division was decided in the context of facts known in 1981, it would be anomalous to value the law degree under circumstances known in 1985, particularly in view of the lapse of almost four years between the trial and remand hearing. The trial court's decision to exclude the valuation using 1985 as a point of reference was not an abuse of discretion.

We accept the valuation of $337,664 by defendant's expert, using the facts known in 1981, as being a correct application of the present value of those future earnings which were in excess of what plaintiff would probably have earned without obtaining a degree. No contrary computation applying this method was offered.

What remains to be decided is the percentage share of the value which, in fairness and equity, should belong to defendant. The Court in *Woodworth* posited three factors for our consideration: "[T]he length of the marriage after the degree was obtained, the sources and extent of financial support given plaintiff [the student spouse] during his years in law school, and the overall division of the parties' marital property." *Id.,* p 269. The parties separated about three and one-half years after plaintiff's graduation from law school. Although the parties dispute some of the details of the financial repercussions of the property settlement, it is clear that defendant received the bulk of the marital assets other than the value of the law degree, including the entirety of the equity in the marital home. As we have already acknowledged, defendant's contributions to the acquisition of the decree were significant, but plaintiff's contributions were also significant. Unlike *Woodworth* and other cases decided by this Court, plaintiff retained his role as the primary source of the family's

support in addition to bearing the burden of his own education. Cf. *Olah, supra; Carlson v Carlson,* 139 Mich App 299; 362 NW2d 258 (1984); *Vaclav v Vaclav,* 96 Mich App 584, 590-592; 293 NW2d 613 (1980). Under this state of affairs, we conclude that defendant is entitled to one-eighth of the value of the law degree, or $42,208. We direct the trial court to amend the judgment of divorce to reflect this award, which shall be payable in monthly installments over a five-year period.

Defendant also argues that the trial court abused its discretion by awarding only $3,500 for her attorney fees incurred during her previous appeals to this Court and the Supreme Court and during the remand proceedings in the circuit court. This award was made in response to the remand directions issued by this Court in the first appeal. *Thomas, supra,* p 832. We find no abuse of discretion. However, we believe that it is appropriate that defendant be awarded appellate attorney fees incurred in the instant appeal. Accordingly, we remand with the direction that the trial court, in its discretion, determine an appropriate award for attorney fees incurred in this appeal. MCR 3.206(A)(3).

Affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion.