LEWIS v LEWIS

Docket No. 105843. Submitted November 10, 1988, at Lansing. Decided November 6, 1989.

Plaintiff, Terry L. Lewis, brought an action in the Midland Circuit Court seeking a judgment of divorce from defendant, Gary D. Lewis. The parties stipulated to an equal split of the marital estate, exclusive of the value of an MBA degree held by the defendant and earned during the marriage. The trial court, Paul J. Clulo, J., concluded that there was no basis for including the MBA in the property division under the circumstances of this case. Plaintiff appealed.

The Court of Appeals *held:*

1. The facts indicate that plaintiff aided in the acquisition of the degree. Because both parties wanted defendant to obtain the degree and worked towards its acquisition, both parties should share in the value of the degree when the marriage failed.

2. The trial court's decision that the degree is not marital property is reversed because a de novo review of the record convinced the Court of Appeals that it would have reached another result had the Court occupied the position of the trial court. The trial court abused its discretion in declining to award any portion of the value of the degree to the plaintiff.

3. The preferable method of compensating plaintiff in this case for her intangible nonpecuniary contributions to the degree is to award a percentage share of the present value of future earnings made possible by the degree.

4. There was sufficient expert testimony in the trial court to support an equitable award to the plaintiff. The trial court, on remand, shall amend the judgment to reflect an award of $21,253.37, one-half the value of the MBA, to plaintiff, payable in monthly installments over a five-year period. Interest shall be computed pursuant to this opinion.

Reversed and remanded.

REFERENCES

Am Jur 2d, Divorce and Separation §§ 898, 943.

Spouse's professional degree or license as marital property for purposes of alimony, support, or property settlement. 4 ALR4th 1294.

E. A. QUINNELL, J., concurred with the determination that the judgment should be amended but dissented as to the appropriate remedy. He would amend the judgment to require defendant to pay plaintiff $300 per month periodic alimony until her death or remarriage or until further order of the court.

1. DIVORCE — MARITAL PROPERTY — ADVANCED DEGREES.

Fairness dictates that the spouse in a divorce action who did not earn an advanced degree be compensated whenever the advanced degree is the end product of a concerted family effort involving mutual sacrifices and effort by both spouses; the fundamental question is not whether the degree is property but, rather, whether the facts give rise to an equitable claim regarding the degree so that a property division can be considered fair and equitable between the parties.

2. DIVORCE — MARITAL PROPERTY — ADVANCED DEGREES.

Since the value of an advanced degree does not evaporate upon the nondegree-earning spouse's remarriage and the trial court has discretion to end alimony if the spouse receiving it remarries, an award of alimony in a divorce action is not a satisfactory method of recognizing a nondegree-earning spouse's efforts towards the earning of an advanced degree by her spouse (MCL 552.13; MSA 25.93).

3. DIVORCE — MARITAL PROPERTY — ADVANCED DEGREES.

An advanced degree may be considered a marital asset the value of which is subject to division between the parties in a divorce action notwithstanding the fact that the degree was acquired without significant monetary expense to the parties and neither party is guilty of fault as indicated by the record.

4. DIVORCE — MARITAL PROPERTY — ADVANCED DEGREES.

A court looks at three factors in determining the percentage share of the value of an advanced degree which should belong to the nondegree-earning spouse in a divorce action: the overall division of the parties' marital property, the sources and extent of financial support given the student spouse during the years in school, and the length of the marriage after the degree was obtained.

*Handlon, Eastman & DeWitt* (by *Tad J. Eastman*), for plaintiff.

*Wilson & Donoghue* (by *Robert L. Donoghue*), for defendant.

Before: MacKenzie, P.J., and Weaver and E. A. Quinnell,* JJ.

MacKenzie, P.J. This appeal as of right by plaintiff wife is from a judgment of divorce granted December 23, 1987, following twenty-one years of marriage. We reverse and remand.

The parties stipulated to a 50/50 split of the marital estate, exclusive of the value of an MBA degree held by the defendant husband. The wife was awarded $39,000 cash, while the marital home and lakefront property were awarded to the husband. The wife was awarded no alimony. The parties had two children, ages twenty and seventeen at the time of the judgment. The wife was awarded physical custody of the minor child and $400 per month child support. The question to be resolved is whether the trial court erred in determining that the husband's MBA degree should not be included in the property division.

Both parties are in their early forties and work for Dow Corning Corporation. The wife has a high school diploma, worked through most of the marriage, and attained the status of administrative secretary at Dow Corning earning approximately $31,000 per year. She testified that she is at the highest salary level possible given her educational level. At the time of the divorce, the husband was a purchasing specialist for Dow Corning earning approximately $44,000 per year. During the course of the marriage, the husband received an associate's degree, a bachelor's degree in 1981, and an MBA degree in December, 1986. The degrees were obtained over an extended period of time by taking one or two evening classes per term. Books and tuition for the classes were reimbursed under Dow Corning's tuition reimbursement program. The

---

* Circuit judge, sitting on the Court of Appeals by assignment.

wife had responsibility for the couple's children while the husband attended classes and studied. She could have participated in the tuition program had she wished.

The wife testified that the purpose for obtaining the husband's advanced degrees was to further her husband in his job and thus enhance the family's standard of living. The husband maintained that there was no benefit or pay increase at Dow Corning tied to the MBA degree. He stated that he looked upon the MBA as an insurance policy which had value in the sense of giving him a marketable skill in the event something happened at Dow Corning and he had to look elsewhere for employment.

Dow Corning's manager of compensation stated that, although a starting MBA degree employee would receive a salary approximately $400 per month more than a starting BS degree employee, pay increases were performance related for employees who earned their degrees while working at Dow. Calvin A. Hoerneman, an economics professor at Delta College, testified that in the general market place a person with an MBA enjoyed a starting salary anywhere from approximately twenty percent to fifty percent higher than a person holding a bachelor's degree. Professor Hoerneman determined that the husband had a twenty-year work expectancy. Using the $400 per month starting differential at Dow Corning, he calculated the value of the husband's MBA at $96,000 over that period, having a present value of $42,506.75 in December, 1987.

The trial court looked to the equities in this case to determine what part the husband's MBA should play in a fair and equitable distribution of the parties' property. The trial court found that the "whole game plan" of the parties was to work

toward defendant's educational attainment. However, the court determined that three important factors were missing which would justify including the MBA in the division of property, namely, contribution of the wife, use of marital assets, and fault. The court found that the wife did not sacrifice her own educational attainments for the benefit of her husband and would have borne the burden of the dual role of working wife and homemaker regardless of whether the husband sought additional education. The court found there was no financial strain on the family since the costs of obtaining the degree were reimbursed by Dow Corning. The court found no fault leading to the marital breakdown which would justify an unequal property division, even though the court concluded that one of the reasons for the breakdown of the marriage was the defendant's emphasis on work and study, to the detriment of his family responsibilities. The court determined that the projection by Professor Hoerneman as to defendant's increased earning potential was based on mere speculation. The court found that the $400 starting salary differential at Dow played no part here and that the national statistics to which the expert witness referred had no relevancy to this case. The trial court concluded that there was no basis for including the MBA in the property division under the circumstances of this case. We disagree.

An advanced degree has been held to be a marital asset, to be distributed as property. *Woodworth v Woodworth,* 126 Mich App 258; 337 NW2d 332 (1983), lv den 419 Mich 856 (1984). Subsequent decisions have held that an advanced degree is not necessarily a marital asset, but should be considered as a factor in awarding alimony. *Daniels v Daniels,* 165 Mich App 726, 731; 418 NW2d 924

(1988); *Wilkins v Wilkins,* 149 Mich App 779, 789-790; 386 NW2d 677 (1986); *Olah v Olah,* 135 Mich App 404; 354 NW2d 359 (1984). Fairness dictates that the spouse who did not earn an advanced degree be compensated whenever the advanced degree is the end product of a concerted family effort involving mutual sacrifice and effort by both spouses. *Woodworth, supra,* p 261. Accord: *Thomas v Thomas (After Remand),* 164 Mich App 618, 623; 417 NW2d 563 (1987).

As the trial judge recognized, the cases have varied in their characterization of degrees since *Woodworth* unequivocally stated that a law degree was a marital asset and should be valued and taken into consideration in the property settlement. Degrees are not property in the classic sense, a point made in *Olah, supra,* where the wife was awarded alimony as compensation for her efforts while the husband pursued his advanced degree. However, the basic purpose of alimony is to assist in the other spouse's support. See *Kavanagh v Kavanagh,* 30 Mich App 636; 186 NW2d 870 (1971), lv den 384 Mich 843 (1971). Furthermore, MCL 552.13; MSA 25.93 gives the trial court discretion to end alimony if the spouse receiving it remarries. Because the value of an advanced degree does not "evaporate" upon the nondegree-earning spouse's remarriage, we do not find an award of alimony a satisfactory method of recognizing that spouse's efforts toward earning the degree. As the trial court noted, the fundamental question in cases involving advanced degrees is not whether a degree is property, but rather "whether the facts in the case give rise to an equitable claim regarding the degree so that a property division can be considered fair and equitable between the parties." *Thomas, supra,* p 623.

The first factor the court found missing in com-

paring this case to the reported cases was the wife's contribution to the husband's education. The court agreed the wife had contributed in a general way, stating that the mutually agreed upon "whole game plan" of the parties was defendant's educational attainment. However, the court awarded nothing to the wife to compensate her for the MBA because the wife did not "sufficiently sacrifice or contribute for her husband's benefit."

We disagree with the trial court's premise that whatever sacrifices a wife makes while her husband obtains a degree (or, indeed, any other efforts undertaken by a wife to promote her husband's career) are made only for the benefit of the husband. Such efforts or sacrifices are typically made to benefit the entire household or the family entity. The word "sacrifice" in the sense used in the cited cases means giving up something desirable toward achieving a higher goal, or for an advantageous or beneficial end.

In *Carlson v Carlson,* 139 Mich App 299; 362 NW2d 258 (1984), the sacrifices made by the non-degreed wife were working at a low-paying job to support the parties while the husband was in school and relocating where he was attending class. She sacrificed building up seniority in a job in which she might have acquired additional skills, earned more money, and accumulated a retirement equity. *Carlson, supra,* p 303. The sacrifices in the instant case were the wife's time and energy—sacrifices less tangible, perhaps, but of no less import. Had the husband not been working on furthering his education throughout the marriage, he could have assisted in childrearing and the everyday details of household and family management. The wife would have had more free time to spend with her family or to pursue personal interests. Clearly, in this case, as in *Carlson,* the wife

gave up something to enable the parties to pursue
their goal of more financial security for the family.

The court's finding that the wife did not sacrifice
her own educational attainments and would have
borne the burden of the dual role of working wife
and homemaker whether or not the husband
sought additional education may be accurate, al-
though we doubt her household burden would
have been as great. Nevertheless, we are confident
that the reason the wife was willing to be the one
spouse burdened with such a dual role was that
she expected to be around to share the fruits of
her labor and sacrifice. If this wife had realized
the marriage would end about the time the par-
ties' "game plan" paid off, she might well have
followed a different "game plan" which would
have enhanced her own career or personal inter-
ests. Concededly, the testimony indicates that the
wife willingly assumed the traditional roles of wife
and mother during her spare time from her full-
time job. Acceptance of this labor does not negate
its value in permitting the husband to pursue his
career-enhancing studies, however.

The wife testified that after working outside the
home all day she came home and, while her hus-
band studied and attended classes, she had the full
responsibility for the children. She assumed the
responsibilities toward their school functions and
was a campfire leader and Sunday school teacher.
She testified that the husband's efforts while ob-
taining the bachelor's degree and the MBA were
mainly directed to those goals; his priority was not
the marriage and the family.

She stated:

> He took one or two classes at a time, so he
> would have two nights he would come home and
> just eat and leave for school, and I think they

were like 7 to 10 o'clock P.M., the classes. The
other evenings he would be studying, you know
right after dinner. Weekends was [sic] devoted
pretty much to studying.

She did not oppose the allocation of her time to
running the home in addition to having a full-time
job, but we find that by taking this role she aided
in the acquisition of the degree. Because both
parties wanted to obtain the degree, and worked
towards its acquisition, when the marriage failed,
both parties should share in the value of the
degree.

We agree with the trial court that, while both
parties contributed financially to the support of
the family, the degree was acquired without signif-
icant monetary expense to the parties. The hus-
band's employer reimbursed the parties for tuition
and books. We also agree that neither party is
guilty of fault as indicated by the record. Neither
of these aspects of the case prevents the degree
from being considered a marital asset the value of
which is subject to division between the parties.

We reverse the trial judge's decision that the
degree was not marital property because our de
novo review of the record convinces us that we
would have reached another result had we occu-
pied the position of the trial court. *Perrin v Per-
rin,* 169 Mich App 18, 22; 425 NW2d 494 (1988).
The trial court abused its discretion in declining to
award any portion of the value of the husband's
MBA degree to the wife. *Thomas, supra,* p 622.

We believe the preferable method of compensat-
ing the wife in this case for her intangible nonpe-
cuniary contributions to the MBA degree is to
award a percentage share of the present value of
future earnings made possible by the degree. Here,
as in *Thomas, supra,* p 623, and *Woodworth,* the

degree was the end product of a concerted family effort and the result of mutual sacrifice and effort by both parties. In the instant case, the parties were married virtually the entire time the husband earned his advanced degree. The wife did not enjoy the fruits of the husband's advance degree since the parties separated just prior to the husband's obtaining the degree.

In our exercise of de novo review of the evidence to decide the appropriate award, we look to the expert testimony in the record. While the trial court determined that any valuation of the husband's degree in this case would be too speculative, we believe there was sufficient expert testimony to support an equitable award to the wife. See *Woodworth, supra,* p 266. The proofs presented by the wife's expert indicated that the present value of the degree at the time of the divorce was $42,506.75. In determining the percentage share which should belong to the wife, we consider three factors: the overall division of the parties' marital property, the sources and extent of financial support given the student spouse during his years in school, and the length of the marriage after the degree was obtained. *Thomas, supra,* p 625; *Woodworth, supra,* p 269. The parties themselves, in dividing the other marital assets, made an equal distribution and we find that a like distribution of the value of the husband's degree is proper under these facts. We find that the work of the wife in running the home, performing domestic tasks, and nurturing the children, work traditionally performed by women, has intrinsic value the performance of which can enable the primary wage-earner to devote his time fully to striving to do those things which will enhance his career. As noted above, the parties separated shortly before the husband received his degree. In *Thomas, su-*

pra, the nonstudent spouse enjoyed the benefits of her husband's increased earning capacity for many years, but in the instant case the wife did not share in the rewards of her efforts. While the employer here did not give automatic raises upon the acquisition of degrees, the record does indicate the husband's job performance improved as his education progressed.

We direct the trial court to amend the judgment of divorce to reflect this award of one-half of the value of the MBA, i.e., $21,253.37, which shall be payable in monthly installments over a five-year period. Interest shall be computed following *Thomas v Thomas (On Remand),* 176 Mich App 90; 439 NW2d 270 (1989). Further, a clause shall be included providing that if this award becomes in arrears the statutory interest rate of twelve percent on the entire balance then unpaid shall be added to the obligation so long as the default continues. See *Carlson, supra,* p 305.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

WEAVER, J., concurred.

E. A. QUINNELL, J. *(concurring in part and dissenting in part).* I agree that the judgment should be amended, but disagree as to the appropriate remedy.

The division of marital property is committed to the sound discretion of the trial court. However, review in this Court is not governed by the typical "abuse of discretion" definition.[1] This Court reviews property settlements de novo on the record,

[1] A frequently cited definition is found in *Spalding v Spalding,* 355 Mich 382, 384-385; 94 NW2d 810 (1959). However, in *Bosak v Hutchinson,* 422 Mich 712, 737-738; 375 NW2d 333 (1985), the Court at least tacitly approved the far more realistic statement of the concept

but will not reverse or modify the property division unless it is convinced that it would have reached another result had it occupied the position of the trial court. *Perrin v Perrin,* 169 Mich App 18, 22; 425 NW2d 494 (1988). Other cases have held that the standard of review requires this Court to determine whether the lower court result is "clearly erroneous." A finding is clearly erroneous only if, after review of the entire record, we are left with the definite and firm conviction that a mistake has been made. *Kowalesky v Kowalesky,* 148 Mich App 151, 155; 384 NW2d 112 (1986), lv den 425 Mich 876 (1986).

This panel would have reached another result had we occupied the position of the trial court, and we are left with the definite and firm conviction, after review of the entire record, that a mistake has been made. I view the origin of the mistake as being the attempt by the parties, by stipulation, to limit the trial court to deciding whether or not the advanced degree was a marital asset. This attempt has at least two flaws.

First, the parties lacked the authority to so limit a court.

> The end sought in the division of property is a fair and equitable distribution under all of the circumstances. *Ripley v Ripley,* 112 Mich App 219, 226-227; 315 NW2d 576 (1982). The division is not governed by any rigid rules or mathematical formulas. *Ripley, supra.* To the extent that the relevant provision of the parties' consent judgment attempts to alter this function, it is invalid. [*Greaves v Greaves,* 148 Mich App 643, 647;384 NW2d 830 (1986)].

Second, an attempt to address the MBA as a

expressed by Justice Levin, concurring in *People v Talley,* 410 Mich 378, 396-400; 301 NW2d 809 (1981).

discrete issue is nothing more than an attempt to find a simple answer to a complex issue. The majority opinion and the trial court have accurately noted that different panels of this Court are not in agreement as to whether an advanced degree should be considered a marital asset to be distributed as property, or as a factor in awarding alimony. More importantly, attempting to value an MBA degree in terms of either property concepts or alimony concepts ignores the overall objective of accomplishing a fair and equitable result in a divorce case, under *all* the circumstances. Traditionally, factors to be considered in distributing property include the source of the property, the length of the marriage, the needs of the parties, their earning ability, and the cause of the divorce. Overlapping factors to be considered in awarding alimony include the duration of the marriage, the contributions of the parties to the joint estate, the ages of the parties, their health, their stations in life, the necessities and circumstances of the parties, and the earning ability of the parties. *Wilkins v Wilkins,* 149 Mich App 779, 791; 386 NW2d 677 (1986). In considering these factors, it really matters little whether the defendant has an MBA, or whether he is a licensed master plumber as distinct from a journeyman plumber. Whatever the attainment, it is only one part of the overall circumstances of the parties and cannot be considered fairly in isolation.

Here, the stipulation of the parties and the ruling of the trial court that the MBA is not property have combined to accomplish an inequitable result. The assets of the parties have been divided equally, but defendant has a gross income of approximately $1,000 per month more than plaintiff, and presumably his retirement benefits will be somewhat greater also. I agree that some

amendment is necessary, and that amendment can take one of at least three possible forms.

1. Under the authority of *Greaves, supra,* we could amend the stipulation of the parties, e.g., award the wife the marital home plus half the cash, and award the husband one-half the cash. All courts, including this one, are most reluctant to set aside a stipulation of the parties, in that we are not familiar with the motives of the parties in reaching that stipulation.

2. We could award a lump sum of money to the wife, which the majority has seen fit to do, payable in installments; such payments are sometimes called alimony in gross, a term which should be abandoned since it is really nothing more than a property provision. See *Daniels v Daniels,* 165 Mich App 726, 731; 418 NW2d 924 (1988), and *Wilkins, supra,* pp 794-795 (J. P. Noecker, J. concurring).

3. We could award the wife periodic alimony.

On balance, I conclude that an equitable result would be achieved by an amendment to the judgment requiring defendant to pay plaintiff the sum of $300 per month until her death or remarriage or until further order of the trial court. Such an award will increase plaintiff's annual gross income to some $34,600[2] in recognition of her contribution to the financial circumstances of the parties at the time of the divorce, including the existence of the MBA degree. Defendant's gross income will be reduced to some $40,400,[3] some $5,800 more than plaintiff's. I consider this difference to be appropriate. As to the MBA degree itself, it was defendant who did the studying and wrote the exams. As to the overall condition of the finances of the parties

[2] Based on income as of the date of trial.

[3] *Id.*

while they were married, this difference also recognizes defendant's talent and industry in generating a higher income. Such a provision allows flexibility in dealing with possible future changes, e.g., defendant's loss of his job, plaintiff's loss of her job. I would decline to order any lump sum amount paid based on a calculation of present value. Such a provision becomes unchangeable and could result in unfairness or inequity in the future as to either of the parties. Further, consideration of an advanced degree as "property" distorts traditional property concepts beyond recognition.

Accordingly, I would remand this matter to the trial court for an order amending the judgment of divorce so as to provide for periodic alimony as set forth above and award no costs, neither party having prevailed in full.