KRAUSE v KRAUSE

Docket No. 100313. Submitted October 12, 1988, at Detroit. Decided May 15, 1989. Leave to appeal applied for.

Andrew J. Krause and Kimberly Ann Krause were married in 1980. At the time, Andrew was an undergraduate college student and Kimberly was employed full-time. Andrew continued his education, while Kimberly continued working. The Krauses lived in Andrew's grandparents' home for almost two years rent free and Andrew secured loans totalling approximately $79,000 to finance his education. The Krauses also had one child, born in 1982, which Andrew's grandmother cared for while Andrew attended school and Kimberly worked. Due to Andrew's relationships with other women, the marriage relationship deteriorated. Andrew filed for divorce in Macomb Circuit Court in April, 1985. In July, 1985, Andrew received a degree in dentistry and secured employment with a dentist in Ironwood, Michigan. In rendering the judgment of divorce, the court, Kenneth N. Sanborn, J., declined to divide Andrew's dental degree as a marital asset, but did consider the degree in awarding Kimberly alimony in gross in the amount of $169,000, payable over the course of twenty years. Kimberly was awarded physical custody of the parties' child and Andrew was ordered to pay $35 per week in child support and to pay Kimberly's attorney fees in the amount of $3,000. Each was awarded the personal property in their possession, and Andrew was made solely responsible for the repayment of his student loans. Andrew appealed and Kimberly cross appealed.

The Court of Appeals *held:*

1. The court did not err in denying Andrew's motion for a new trial to permit the presentation of newly discovered evidence. The "newly discovered evidence" which Andrew wished

REFERENCES

Am Jur 2d, Divorce and Separation §§ 624 *et seq.*, 657 *et seq.*, 746-748, 898.

License or professional degree of spouse as marital property for purposes of alimony, support, or property settlement. 4 ALR4th 1294.

to present could have been discovered through the exercise of due diligence in time to be presented at trial.

2. The court was correct in not rendering an award of any interest in Andrew's dentistry degree to Kimberly as part of the property division in the divorce. Any award by the court made on the basis of the dentistry degree should come in the form of alimony, which it did.

3. The court's award of alimony in gross in the amount of $169,000 was grossly excessive. Kimberly is not entitled to any award specifically designed to compensate her for a portion of the value of Andrew's dentistry degree. What may be considered in determining an appropriate award of alimony is Kimberly's assistance to Andrew. If Kimberly wishes to pursue her education or take other similar steps to improve her employability or income-earning potential, an award of rehabilitative alimony would be appropriate. If Kimberly does not wish to further her education, an award of periodic alimony for a limited duration would be in order to equitably compensate her for her efforts and sacrifices while Andrew pursued his dentistry degree. The award, while compensating Kimberly, should not impose an undue burden on Andrew. The alimony provisions of the divorce judgment are vacated and the matter is remanded to the trial court to determine an appropriate alimony award.

4. The trial court did not err in its award of attorney fees.

5. The trial court may wish to reconsider the amount of the child support award on remand.

Affirmed in part, reversed in part, and remanded.

1. DIVORCE — MARITAL ASSETS — EDUCATIONAL DEGREES.

An educational degree has none of the attributes of property in the usual sense of that term and, for that reason, should not be considered a marital asset which has a value which can be divided in a property settlement; however, a spouse who works and supports the mate while the mate pursues an education should be compensated for such support and efforts where the parties subsequently divorce.

2. DIVORCE — ALIMONY — APPEAL.

An award of alimony is within the discretion of the trial court; the Court of Appeals reviews such an award de novo and exercises its independent judgment in reviewing the evidence, but gives grave consideration to the trial court's findings and will not reverse unless convinced it would have come to a different conclusion had it been sitting in the trial court's position.

3. Divorce — Alimony.

> Factors to be considered in determining whether alimony should be awarded in a judgment of divorce include: (1) the past relations and conduct of the parties; (2) the length of the marriage; (3) the abilities of the parties to work; (4) the source and amount of property awarded to the parties; (5) the ages of the parties; (6) the abilities of the parties to pay alimony; (7) the present situation of the parties; (8) the needs of the parties; (9) the health of the parties; (10) the prior standard of living of the parties and whether either is responsible for the support of others; and (11) general principles of equity.

4. Divorce — Alimony — Educational Degrees — Property Settlements — Relative Contributions of the Parties.

> The relative contributions of the parties must be considered in determining the amount of compensation to which a nonstudent spouse is entitled where the nonstudent spouse worked to support the family while the student spouse pursued his educational degree and the parties subsequently divorce.

5. Divorce — Alimony — Rehabilitative Alimony.

> A wife who has deferred her own further education or professional training by reason of the constraints of the marriage, whether or not one of those constraints has been the provision of support to her husband during his schooling, and who has a postdivorce plan to enhance her own income capacity by pursuing educational objectives may be entitled to rehabilitative alimony to enable her to do so, consistent with her husband's immediate and projected financial ability; where that is not her plan or intention, alimony in its more conventional forms may be available to her, again dependent on the spouses' respective financial situations; the wife should be fully compensated for her efforts and sacrifices, but the husband should not be unduly burdened by the award.

*Williams, Schaefer, Ruby & Williams, P.C.* (by *James P. Cunningham*), for plaintiff.

*Bromley, Roy & Dawson* (by *David R. Dawson*), for defendant.

Before: Holbrook, Jr., P.J., and Sawyer and J. M. Batzer,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

PER CURIAM. Plaintiff appeals, and defendant cross appeals, from the judgment of divorce entered by the circuit court on plaintiff's complaint for divorce. We reverse in part and affirm in part.

The parties were married on February 8, 1980, while plaintiff was pursuing an undergraduate degree and defendant was employed full-time. Shortly after the marriage, the parties moved in with plaintiff's grandparents. The parties paid no rent, but were responsible for purchasing their own food. This arrangement continued for the remainder of plaintiff's undergraduate education and continued thereafter as plaintiff began his pursuit of a degree in dentistry. The parties moved out of plaintiff's grandparents' house around December, 1982, after plaintiff had completed 1½ years of the four-year curriculum required for his dentistry degree.

Defendant was employed during the course of the marriage; plaintiff worked during his undergraduate studies and worked the summer following his first year of dental school. Plaintiff did not work subsequent summers as the dental school curriculum did not permit continued employment. Plaintiff borrowed heavily during dental school, incurring student loan indebtedness of just under $70,000 and loans from family members of approximately $9,000. While a significant portion of these borrowed funds paid for plaintiff's educational expenses, a portion of the loan proceeds also contributed to the support of the family during the marriage. Under the provisions of the divorce judgment, plaintiff is solely responsible for the repayment of these loans.

Furthermore, during the course of the marriage and while plaintiff was in dental school, a daughter was born to the parties in January, 1982. Defendant returned to work shortly after the birth

of the child and plaintiff's grandmother cared for the child while defendant was at work and continued to do so for the duration of the parties' marriage.

The parties' marriage deteriorated while plaintiff was in dental school, apparently at least in part due to plaintiff's infidelities. One of plaintiff's relationships with other women resulted in a child which was born sometime in 1984. The parties separated sometime prior to April, 1985, and plaintiff filed a complaint for divorce on April 5, 1985. Plaintiff graduated from dental school the following July and found employment with a dentist in Ironwood, Michigan.

In rendering the judgment of divorce, the trial court declined to divide plaintiff's dental degree as a marital asset, but did take the degree into consideration in awarding defendant alimony in gross in the amount of $169,000, payable over the course of twenty years in installments of $100 per week for the first five years, $150 per week for the second five years, and $200 per week for the remaining ten years. Physical custody of the child was granted to defendant and plaintiff was ordered to pay child support in the amount of $35 per week. Furthermore, plaintiff was required to pay defendant's attorney fees in the amount of $3,000. The parties had accumulated only a modest amount of personal property during the course of the marriage and each was awarded the personal property in their possession at the time of judgment. Finally, plaintiff was made solely responsible for the repayment of his student loans.

Plaintiff's sole issue on appeal is that the trial court erred in denying his motion for new trial to permit the presentation of newly discovered evidence. Inasmuch as the "newly discovered evidence" which plaintiff wished to present could

have been discovered with the exercise of due diligence in time to be presented at trial, we do not believe that the trial court erred in denying the motion.

While plaintiff does not directly challenge the provisions of the judgment of divorce on appeal, defendant has cross appealed asking us to review the judgment, particularly with respect to the provisions concerning the valuation of the professional degree and the award of attorney fees. In both instances, defendant argues that she is entitled to a greater award. While we disagree with defendant's assertion, we will nevertheless exercise our power of de novo review and review the judgment of divorce, reversing in part provisions of that judgment.

Panels of this Court have split on the issue whether a degree should be treated as marital property. This Court has held that a degree is an asset of the marriage subject to property division, while other panels have concluded that, while the degree is not necessarily an asset, it should be considered in an award of alimony. See *Daniels v Daniels,* 165 Mich App 726, 731; 418 NW2d 924 (1988). We agree with the observations of Judge R. B. BURNS in *Olah v Olah,* 135 Mich App 404, 410-411; 354 NW2d 359 (1984):

> In our opinion, a spouse who works and supports the mate while the mate pursues an education should be compensated. However, we do not adhere to the proposition that a degree is property and therefore a marital asset. We believe as stated in *Graham v Graham,* 194 Colo 429, 432; 574 P2d 75, 77 (1978):
>
> "An educational degree, such as an M.B.A., is simply not encompassed even by the broad views of the concept of 'property.' It does not have an exchange value or any objective transferable value

on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed or pledged. An advanced degree is a cumulative product of many years of previous . education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. In our view, it has none of the attributes of property in the usual sense of that term."

Accordingly, we believe the trial court was correct in not rendering an award to defendant as part of the property division in the divorce for any interest in plaintiff's dentistry degree. Rather, any award by the trial court made on the basis of the dentistry degree should come in the form of alimony, which it did. Therefore, it becomes necessary to review the trial court's award of alimony to determine if that award was proper. We believe that it was not.

The award of alimony is within the discretion of the trial court, but this Court reviews such an award de novo and exercises its independent judgment in reviewing the evidence, giving grave consideration to the trial court's findings and not reversing unless this Court is convinced that it would have come to a different conclusion had it been sitting in the trial court's position. *Cloyd v Cloyd,* 165 Mich App 755, 759; 419 NW2d 455 (1988). The *Cloyd* Court outlined the factors to be considered in awarding alimony:

Factors to be considered in determining whether alimony should be awarded in a judgment of divorce include: (1) the past relations and conduct of the parties; (2) the length of the marriage; (3) the ability of the parties to work; (4) the source and

amount of property awarded to the parties; (5) the age of the parties; (6) the ability of the parties to pay alimony; (7) the present situation of the parties; (8) the needs of the parties; (9) the health of the parties; (10) the prior standard of living of the parties and whether either is responsible for the support of others; and (11) general principles of equity. [*Id.*]

We are convinced that we would have reached a different conclusion had we occupied the position of the trial court.

In looking to these factors, we believe that the first factor weighs somewhat in favor of the award of alimony as plaintiff's conduct did lead to the deterioration of the marriage. The second factor weighs against the award of alimony inasmuch as the marriage lasted only five years. The third factor weighs against the award of alimony as both parties are able to work. The fourth factor is neutral as there was no significant amount of property accumulated during the course of the marriage. The fifth factor weighs against the award of alimony as both parties were under thirty years of age at the time of trial. The sixth factor weighs against the award of alimony as it does not appear from the record that plaintiff has any significant financial ability to pay alimony in light of his child-support and student loan obligations. The seventh factor weighs in favor of the award of alimony as plaintiff's present situation, being a licensed dentist, did arise from the efforts of the parties during the marriage. With respect to the eighth factor, we conclude that this factor is neutral. While defendant's income is modest, approximately $15,000 for 1985 according to the trial court's opinion, plaintiff's income is not significantly greater. Defendant is able to work and support herself and, therefore, we do not believe

alimony is warranted under this factor. As for the ninth factor, nothing in the record before us suggests that either party has any significant health problems. With respect to the tenth factor, it does not appear to us from the record that defendant has suffered a loss in her standard of living as a result of the divorce, though we do note that she has custody of the parties' minor child and plaintiff's child-support obligation is modest. Finally, factor eleven weighs in the favor of an award of alimony in that, under the principles of equity, defendant should receive some recompense for her efforts in assisting plaintiff's pursuit of his dentistry degree. *Olah, supra.*

Turning to the specific consideration of the compensation to which defendant is entitled for her efforts in plaintiff's pursuit of the dentistry degree, we do not believe that she is entitled to a financial windfall merely by virtue of the fact that she was married to plaintiff while he earned his degree. As this Court noted in *Thomas v Thomas (After Remand),* 164 Mich App 618, 625-626; 417 NW2d 563 (1987), the relative contributions of the parties must be considered in determining the amount of compensation to which the spouse is entitled.

On the basis of the trial court's findings of fact in its opinion, it would appear that defendant earned over $50,000 during the four years of plaintiff's dental education, including the period the parties were separated. Although the trial court's opinion reflects that plaintiff worked during the summer following his freshman year of dental school, the trial court made no finding as to the amount of plaintiff's income from that employment. The record also reflects that plaintiff borrowed approximately $70,000 in student loans during his dental education, for which he remains solely responsible for repayments, as well as an

additional $9,000 from family members. Additionally, the parties received substantial assistance from plaintiff's grandparents by being allowed to live rent-free in the grandparents' home for the first 1½ years or so of dental school, as well as plaintiff's receiving additional sums from his grandparents during the course of his education. Additionally, plaintiff's grandparents assisted the parties by caring for their child while plaintiff was in school and defendant was at work.

It should also be considered that plaintiff's receipt of a dental degree did not merely reflect the financial investment and sacrifices of the parties, but also a considerable investment of time and effort by plaintiff in pursuing the degree. The trial court's opinion reflects that plaintiff spent approximately sixty hours per week on school-related activities. In light of these facts, we conclude that, while defendant certainly rendered a great deal of assistance in plaintiff's pursuit of his dentistry degree, it was by no means defendant's sole sacrifice, financial or otherwise, that resulted in plaintiff's earning his degree. Financially, the majority of funds expended by the parties during the marriage, both for plaintiff's education and household expenses, came from plaintiff, albeit much in the form of loans which plaintiff is now obliged to repay. A significant amount of additional support came from plaintiff's relatives. In addition, there was, as previously noted, plaintiff's investment of a good deal of time in his educational pursuits.

What can be concluded is that the parties entered into their marriage with certain hopes, aspirations, and expectations, both financial and otherwise. While it is incumbent upon the courts to assist the parties in resolving their mutual financial affairs, it is neither feasible nor desirable for the courts to address all the problems posed by a

divorce. It is beyond the ability of the judicial system to fully address all of the ramifications flowing from a divorce. We believe that awarding a specific sum of money in a divorce judgment for an academic degree, whether it is made part of a property division or called alimony in gross, goes beyond settling the parties' financial affairs and, rather, is an attempt to remedy the noneconomic ramifications of divorce. Such an award valuing an academic degree ignores the fact that a degree is not property, *Olah, supra,* and marriage is not solely an economic transaction.

This latter proposition was discussed by Judge Pressler of the Appellate Division of the Superior Court of New Jersey in *Mahoney v Mahoney,* 182 NJ Super 598; 442 A2d 1062, 1070-1072 (1982), where he articulately explained why the courts are ill advised to divide an academic degree at the time of divorce, and we take the liberty of quoting Judge Pressler's comments at length:

> We take, however, a fundamentally different view based on our perception of the essential nature of the marital relationship. Marriage is a joint venture which, while it has a considerable economic dimension, is not merely an economic undertaking. . . . While the marriage endures and the spouses define for themselves their respective contributions, financial and otherwise, to each other and to the marriage, they do not, nor is there any reason to, place relative values on the worth of their respective contributions. They contribute as the dictates of their relationship, their mutual interests and their own self-determination require, and they share the benefits, financial and otherwise, in the same manner. They do not nor do they expect to pay each other for their respective contributions in any commercial sense. Rather, they work together, in both income and nonincome producing ways, in their joint, mutual and individual interests.

The termination of the marriage represents, if nothing else, the disappointment of expectations, financial and nonfinancial, which were hoped to be achieved by and during the continuation of the relationship. It does not, however, in our view, represent a commercial investment loss. Recompense for the disappointed expectations resulting from the failure of the marital entity to survive cannot, therefore, be made to the spouses on a strictly commercial basis which, after the fact, seeks to assign monetary values to the contributions consensually made by each of the spouses during the marriage. Appropriate recompense, as it were, is afforded by an award of alimony where the parties' respective income situations warrant and by equitable distribution of the financial assets accumulated during the marriage. . . .

The question, then, is whether there should be a different rule and a different basic jurisprudence which would place on a strictly commercial basis the financial contributions made by one spouse during the marriage to the other spouse's education and training in order that that contribution alone be commercially recompensed. Unless the spouses themselves have otherwise agreed, we think not, even if the marriage terminates before the expected "fruits" of the education and training are borne.

The claim of special recompense is based on the notion that there are unique considerations involved when one spouse's financial contribution is made in order to enable the other to obtain a professional degree or license. In our view, that claim represents a kind of elitism which inappropriately depreciates the value of all the other types of contributions made to each other by other spouses pursuing different life styles and responding in their individual ways to their life experiences. Clearly, a wife who supports her husband while he pursues an educational or professional objective (or the husband who supports the wife, if that is the case) is at the same time receiving nonfinancial contributions from him. The support-

ing wife is, moreover, not sacrificing for the exclusive benefit of the husband. Her efforts are for them both, as are his, in following a self-determined, consensual and mutual plan they have agreed upon for their joint benefit. If the plan fails by reason of the termination of the marriage, we do not regard the supporting spouse's consequent loss of expectations by itself as any more compensable or demanding of solicitude than the loss of expectations of any other spouse who, in the hope and anticipation of the endurance of the relationship and its commitments, has invested a portion of his or her life, youth, energy and labor in a failed marriage.

Ultimately, we are in accord with the rationale of the Arizona court which, in *Wisner v Wisner,* [129 Ariz 333, 341; 631 P2d 115 (Ariz App, 1981)] rejected a wife's unjust enrichment claim on this reasoning:

" . . . Marriage is by nature not an arm's length transaction between two parties. If two individuals wish to define their marriage as such, they may of course do so and memorialize it in a contract that spells out the specific rights and duties of each. However, in the absence of such an agreement, we believe it is improper for a court to treat a marriage as an arm's length transaction by allowing a spouse to come into court after the fact and make legal arguments regarding unjust enrichment by reason of the other receiving further education during coverture. In the absence of a specific agreement, such legal arguments simply do not fit the context of a marital relationship."

\* \* \*

Where the spouses' respective earning capacity or educational achievements are not comparable at the time of the divorce, there may well be equitable considerations appropriately invoking application of conventional doctrine. Thus, for example, where a wife has deferred her own further education or professional training by reason of the constraints of the marriage, whether or not one of those constraints has been the provision of support

to her husband during his schooling, and if it is her post-divorce plan to enhance her own income capacity by pursuing educational objectives, an award of what has come to be known as rehabilitative alimony to enable her to do so would be appropriate, consistent with her husband's immediate and projected financial ability. . . . Where that is not her plan or intention, alimony in its more conventional forms may be available to her, again dependent on the spouses' respective financial situations.

Returning to the case at bar, we believe that the trial court's award of alimony in gross in the amount of $169,000 was grossly excessive. For the reasons stated above, we believe that defendant is not entitled to any award specifically designed to compensate her for a portion of the "value" of plaintiff's degree. Rather, we believe that the trial court may consider defendant's assistance to plaintiff in determining an appropriate award of alimony. While plaintiff is not currently earning an income grossly in excess of defendant's income, his degree certainly renders it more probable that his future income will increase relative to defendant's future income, assuming defendant does not further her education. Absent the issue of plaintiff's dentistry degree, we do not believe the factors to be considered in an award of alimony would justify an award to defendant in the case at bar.

We do believe, however, that defendant's contributions to the family during plaintiff's education do merit some equitable consideration and could potentially justify an award to defendant in the form of alimony. Specifically, we believe that, if defendant wishes to pursue her education or take other similar steps to improve her employability or income earning potential, it is reasonable and equitable to require plaintiff to assist defendant in

those endeavors. Under those circumstances, an award of rehabilitative alimony would be appropriate.

However, we must also recognize the possibility that defendant may not wish to further her education and, therefore, has no need for rehabilitative alimony. Under such circumstances, to equitably compensate her for her efforts and sacrifices while plaintiff pursued his degree, an award of periodic alimony for a limited duration would be in order. In determining such an award, however, the trial court must keep in mind that it is compensating defendant for her assistance to plaintiff while he pursued his degree. Thus, the so-called "value" of the degree or plaintiff's potential income to be earned from having the degree is irrelevant to the analysis. The trial court must focus solely on what is necessary to compensate defendant for the burdens on her or the sacrifices made by her so that plaintiff could pursue his degree.

Finally, it is necessary to consider the limited means of plaintiff to pay alimony at this time. The trial court must consider this in fashioning the award and, in exercising its discretion, may order a small amount over a longer period of time or reserve an alimony award until some time in the future when plaintiff's financial condition improves. Whatever the trial court does, however, should compensate defendant while not imposing an undue burden on plaintiff.

Accordingly, we vacate the alimony provisions of the divorce judgment. On remand, the trial court shall determine an appropriate alimony award in a manner consistent with this opinion.

Defendant also requests that we order an additional award of attorney fees. We have considered the issue and are unpersuaded that the trial court

erred in its award of attorney fees and we decline to modify that portion of the judgment.

Finally, we note that the amount of child support awarded is somewhat modest. Although the parties do not challenge the child-support award, we note the possibility that the trial court may have ordered. a reduced amount in light of the large alimony-in-gross award. Accordingly, the trial court may wish to reconsider the child-support issue on remand.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs, neither party having prevailed in full.

HOLBROOK, JR., P.J., concurs in the result only.